Argued September 18, affirmed September 24, 1929.

CAROLINE DREFS, AN INCOMPETENT PERSON, *v.*
HOLMAN TRANSFER CO. ET AL.

(280 Pac. 505.)

For appellant there was a brief over the name of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Arthur I. Moulton.*

For respondent Holman Transfer Company there was a brief over the name of *Messrs. Wilbur, Beckett, Howell & Oppenheimer,* with an oral argument by *Mr. E. K. Oppenheimer.*

For respondent Arrow Ambulance Company there was a brief and oral argument by *Mr. E. L. McDougal.*

McBRIDE, J.—While it seems probable that a cause of action exists which could be properly urged by an administrator of the deceased under Section 380, Or. L., we are of the opinion that no cause of action exists under the Employers' Liability Act. Soon after the statute was enacted, cases began coming to this court involving the construction of various phases of the statute, and from the decisions of these cases, the writer feels that we have deduced and worked out the following formula:

*In order that an employee may recover under the Employers' Liability Act, the orbit or scope of his employment must require him to be about the machinery or work of the owner in the accomplish-*

*ment of a common purpose in which the owner has an interest.*

The foregoing is substantially the first proposition announced by the respondents in the case at bar, and with exceptions not relating to the present case, we accept it as a fair statement of the general rule.

From the tenor of the act, it is evident that the principal idea in the mind of the framers was to regulate the relations between employers and employees in relation to the use and safeguarding of dangerous machinery and appliances. It was a beneficent statute and as construed by this court, which has gone to the extreme of liberality in construing it, has resulted in extending to employees in hazardous occupations a degree of protection theretofore unknown. One difficulty arose where there appeared to be interlocking interests between the different employers. This is illustrated in the case of *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411). In that case the Enterprise Electric Company generated the electricity and delivered it to one Roe who was the employer of Clayton the deceased. Defendant had connected its wires and transmission system, upon which a dangerous voltage of electricity was being carried, with the motor machinery of the pumping plant operated by Roe. Clayton was Roe's employee and, while engaged in turning off the power by opening the switch and disconnecting the wiring and transmission plant of the defendant with the same, he was killed by a shock of electricity from the wiring, switches and apparatus of defendant. It was alleged that the injury and death were caused by imperfect and negligent insulation, or lack of insulation, of defendant's machinery and connections.

Here was a case where the employer of deceased was Roe, and the defendant electric company had no contractual relations with deceased, but only with his employer, but the death occurred through their negligence in regard to machinery through which they delivered their power to Roe, and about which deceased was required to work. This court was of the opinion that the case disclosed such an intermingling of duties and responsibilities between the electric company and Roe the employer of deceased as brought the case within the spirit of the Employers' Liability Act, and so affirmed a judgment against the electric company.

In *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281), while some expressions in the Clayton case were not adopted, the principle therein expressed was elaborated and approved. Among other matters, the court said:

"Measured by the rule announced in *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028), the title is not broad enough to confer a right of action upon a member of the public as such.. It is true that the opinion in *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411), contains language more sweeping than was necessary; but that case is to be distinguished from the facts in the instant case, for there, although not an employee of the Enterprise Electric Company, Clayton was nevertheless an employee of Carl Roe, the owner of the motor pump for which the defendant was furnishing electricity, and was engaged in work on and about the electric appliance that caused his death."

In the same opinion in another connection it is said:

"The statute imposes a twofold liability; one civil and the other criminal. Nowhere does the statute state in direct or express terms that a member .of the public, who is not also an employee or a person

engaged in work on or about a machine, structure or place specified by the act, shall have a right of action for damages. The Employers' Liability Act does not expressly confer upon the public or upon any person as a mere member of the public the right to sue for damages whenever injured.''

The opinion in the case above cited was not only the result of the most careful and critical research by the justice who wrote it, but by the other members who participated in the hearing, as it was desired to state clearly the boundaries between actions under the Employers' Liability Act and other damage actions at common law or other statutes.

The case of *Rorvik* v. *North Pac. Lumber Co.*, 99 Or. 58 (190 Pac. 331, 195 Pac. 163), is another case in which this court attempted to define the extent of the right of an employee of one party to recover under the Employers' Liability Act for injuries suffered by the negligence of another party occurring upon territory occupied by both. We quote the following ·from the statement of facts in the opinion rendered in the Rorvik case.

''The evidence indicates that at the time the accident occurred the deceased was captain of the steamship 'Klamath,' and an employee of the Klamath Steamship Company, a California company, and that the ship, at the time of the accident, was taking on a load of timber being shipped by defendants; the lumber was being delivered entirely by the employees of the receiver. Neither the decedent nor any employee of the steamship 'Klamath' had any part therein. But the employees of the Klamath Steamship Company were obliged to be about the work carried on by the receivers in order to receive the lumber as it was delivered by the receivers. The two sets of employees in their work intermingled. The contract of sale provided that the lumber should be placed on the wharf within reach of the ship's tackle

by the seller. When the lumber was delivered and placed in reach of the ship's tackle by the receivers, the duties of the employees of the steamship began, namely, to load the lumber on the ship. The employees of the steamship took up the work where the receivers stopped. In fact, as the cars loaded with lumber were placed on the wharf in reach of the ship's tackle, the servants of the steamship would by means of the slings and tackle, remove the lumber from the cars into the hold of the ship. The employees of the receivers and the employees of the steamship, including the steamship's employee, the decedent, thus met on common ground, and both, by the necessities of their duties, were obliged to work on the wharf, on and about the tracks, and around the machinery where the operations were being carried on.''

It will be seen that there was an intermingling both of duties and employees in the work then being prosecuted. It was the duty of the defendants to deliver its lumber at a place on the dock where it could be handled by the employees of the steamship company, who were present to receive and stow it away on the steamship. It goes without saying that defendants' duty involved the employment of such appliances in delivery as would not necessarily tend to the injury, or increase the hazard of the persons on their dock, who were on behalf of the steamship company engaged in loading it on the vessel. Rorvik as captain of the steamship was necessarily on the dock at the place of loading to superintend and oversee the work of the employees of the ship, he being the chief one of the steamship's employees. By reason of the defective appliance used by the defendant, he was knocked overboard and killed. To have held that the defendants, under the circumstances when both corporations engaged in work at the same place and at

the same time in the furtherance of a common object, owed no duty to so provide and use its machinery as not to unnecessarily injure the employees of its co-worker on another branch of the same job, would have been a violation of both the letter and intent of the compensation act fairly construed, and we so held using the following language:

"In view of the able and exhaustive analysis of our Employers' Liability Act by Mr. Justice HARRIS in *Turnidge* v. *Thompson,* 89 Or. 637, 175 Pac. 281, which covers every phase of the question as to the persons who are within or without the act, we deem any attempt at further analysis or distinction unnecessary. From the lucid interpretation in that case and in other cases hereafter mentioned, we deduce the rule that the Employers' Liability Act does not extend to the protection of the general public as such, but that it does extend its protection to employees of the particular person owning or operating dangerous machinery or engaged in hazardous employments, and to other persons or employees of other corporations whose lawful duties require them to be or work about such machinery, or expose themselves to the hazards of the machinery or appliances in use by the owner thereof."

This decision we have followed ever since, and we do not think that it extends to any case where the person charged with doing an injury sustains no such relation by contract or otherwise different from that which he sustains to the whole public.

If the Employers' Liability Act applies to this case, it applies to every case where an employee of a corporation, while in the prosecution of his business, is run into and injured by a truck owned by another corporation. Such is not the intent of the law, and such an application of it would speedily lead to its repeal. The Employers' Liability Act is especially designed to

protect workers in hazardous employment from the negligence of their employers, or those having some relation to the work or place of work or means required to prosecute the work in which they are engaged, and not as a substitute generally for injuries for which other statutes or the common law afford redress.

. This opinion might go further into detail, but we are informed that in the event of our sustaining the judgment of the court below, there will be scant time to secure the appointment of an administrator and commence an action for damages. .In order that the estate of the deceased may have an opportunity to begin such an action without being barred by the statute of limitations, we have thought best to make the. editorial work as brief as possible, which will account for a failure to discuss other decisions cited, especially as some members of the court have participated in all the decisions involving this statute from the time of its enactment, and are consequently familiar with the subject to that extent.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

BROWN, J., not sitting.