Argued February 24, affirmed June 23, 1954

# MYERS *v.* STAUB and PORTLAND GENERAL ELECTRIC COMPANY

(Cases Consolidated)

272 P. 2d 203

*David Spiegel* argued the cause for appellants. On the briefs were Lenske, Spiegel, Spiegel, Martindale & Bloom, of Portland.

*H. H. Phillips* argued the cause for respondent. With him on the brief were Griffith, Phillips & Coughlin, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

WARNER, J.

Pursuant to a stipulation of the parties, the action of Vera Myers, widow of Byron Myers, against Raymond R. Staub and Portland General Electric Company and the like action of Lois Myers, widow of Robert Myers, against the same defendants were consolidated for trial and thereafter tried without the intervention of a jury. The plaintiffs obtained substantial judgments against the defendant Staub, who is not a party to this appeal. Both plaintiffs, however, appeal from a judgment dismissing their respective complaints against the defendant Portland General Electric Company (hereinafter referred to as the "electric company"). Their appeals to this court were also combined for argument.

The joint presentation of these cases in the trial court and in this court was a logical consequence of the strangely identical circumstances which preceded and accounted for the deaths of Byron Myers and his son, Robert Myers, both coworkers in the employ of the defendant Staub on his dairy farm in Clackamas county. Their deaths occurred on succeeding days at the same place on the Staub farm and apparently from the same cause. This situation gives rise to substantially the same facts pleaded in both causes of action and likewise accounts for the same questions of law that are projected in each cause. We will for the purposes of this opinion treat both causes as identical.

Both actions were brought under the provisions of the Employers' Liability Law (ORS 654.305 to 654.335 [heretofore in prior codes known as the Employers' Liability Act]) to recover damages for the deaths of plaintiffs' respective husbands alleged to have resulted from the negligence of the defendants Staub and the electric company in maintaining and supplying electricity to a power line hung too close to the ground.

The electric company here demurs to the complaints on the ground that they do not state a cause of action against it. Since we feel that the complaints are vulnerable to such attack, our examination of the facts is limited to the allegations in the complaints which, insofar as pertinent to this decision, are as more particularly pleaded in the complaint of plaintiff Lois Myers reading:

"III.

"That at all times herein mentioned defendant Raymond R. Staub was and now is the owner of the real property hereinabove described, and that

the said lines were operated, controlled and maintained by defendant Raymond R. Staub upon the property of defendant Raymond R. Staub at his request and with his knowledge of the voltage carried and for his use and purpose.

## "IV.

"That said lines were connected to electric equipment and machinery that utilized said electricity, including a pumping system which consisted of an electrically motivated pump which pumped water from a dammed pond, a tributary of the Willamette River, and into irrigation pipes laid upon the said real property, and that said irrigation pipes were made of metal that conducted electricity.

## "V.

"That on or about September 4, 1947, Robert Myers was an employee of defendant Raymond R. Staub and that the duties of the said Robert Myers as directed by defendant Raymond R. Staub, included working in and about and upon said electrically motivated pump and said irrigation pipes and in the presence and proximity of the said transmission lines, and also included the use, care and cleaning of said metal irrigation pipes, and that on or about September 4, 1947, while the said Robert Myers was so employed, he lifted a piece of the said pipe that was twenty feet long for the purpose of cleaning the same and causing any foreign matter therein to fall or be forced out; and that at said time said irrigation pipe was near the electric power lines which were maintained upon said property by defendant Portland General Electric Company as aforesaid.

## "VI.

"That while Robert Myers was handling said pipe for the purposes above mentioned, said pipe came in contact with the above mentioned power line and the said Robert Myers was immediately and fatally electrocuted by the electric current from said transmission lines."

In Paragraph VIII we find the electric company's violation of the Employers' Liability Law stated as follows:

"That defendant Portland General Electric Company was guilty of negligent, unlawful and reckless conduct and failed to use every device, care and precaution which it is and was practicable to use for the protection and safety of life and limb without impairing the efficiency of either the work of Robert Myers or any of said equipment, in transmitting electric energy of high voltage to and through said lines when it knew or should have known:

"1. That said high voltage electric wiring was maintained upon the premises aforesaid too close to the ground at said time and place, so that the same constituted a hazard to any person employed upon said ground and especially any person handling twenty-foot pipe made of metal that conducted electricity, when it knew or should have known that such person would be in the vicinity.

"2. That no notice of the high voltage of said transmission lines had been posted and no notice or warning of the high voltage of said transmission line given in any other manner.

"3. That said line extended for the transmission of electric energy to a cabin or house upon said premises when there was no use on the part of or on behalf of defendant, Raymond R. Staub, for high electric voltage beyond said pumping system to said cabin but that nevertheless defendant Portland General Electric Company transmitted said high voltage electric current line beyond said pumping system.

"4. That there were no transformers or other devices for the reduction of the electricity beyond said pumping station and in that the said transmission lines were not insulated beyond said point."

In the complaint of the plaintiff Vera Myers the paragraphs of corresponding number read the same,

except the date September 3 is substituted for September 4 and the name Byron Myers is substituted for Robert Myers.

The Employers' Liability Law is both a remedial and preventive statute providing a cause of action to certain individuals named therein against an employer for injury or death of an employee engaged in various hazardous occupations and requiring a high caliber of devices, care and precautions for the safety of those employees. It deprives the employer of the common law defenses of contributory negligence, the fellow servant rule and the assumption of the risk doctrine. Moreover, in an action for the death of an employee, the amount recoverable is not subject to the limitation of $20,000 found in the wrongful death act. ORS 30.020.

In general, the Employers' Liability Law permits recovery where the injury or death results from certain hazardous conditions under the control of the employer and under which the employee is required to work.

■ It is not always necessary that the defendant be the injured workman's immediate employer but may be sufficient if such defendant's interlocking interests with the employer amount to "an intermingling of duties and responsibilities" so as to bring the relationship of the defendant to the workman within the spirit of the Employers' Liability Law. *Drefs v. Holman Transfer Co. et al.,* 130 Or 452, 456, 280 P 505; *Clayton v. Enterprise Electric Co.,* 82 Or 149, 161 P. 411.

■ The question for answer here is whether the facts as pleaded bring the instant cases within the embrace of the Employers' Liability Law as to the defendant electric company, as insisted by the plaintiffs. We are not inquiring whether defendant electric company

was or was not guilty of culpable negligence according to the standards fixed by the rules of common law. If it be assumed for the purposes of this discussion that the electric company is chargeable with culpable negligence within the rules of common law, the plaintiffs must, nevertheless, fail in their respective actions unless the provisions of the Employers' Liability Law apply to the facts disclosed by their complaints, because each plaintiff is suing in her individual capacity. If the Employers' Liability Law applies to the facts as alleged by their respective complaints, the plaintiffs in their individual capacities are then entitled to sue. If we find that the statute does not apply and if the defendant electric company is liable in damages for common law negligence, then the representatives of the decedent spouses of the respective plaintiffs must sue. *Jylha v. Chamberlain,* 168 Or 171, 173, 121 P2d 928; *Saylor v. Enterprise Electric Co.,* 106 Or 421, 424, 212 P 477. If the Employers' Liability Law does not embrace a factual situation like the one pleaded in the instant case, the demurrer must be sustained, even though it is assumed that the defendant electric company was guilty of negligence according to common law standards. *Saylor v. Enterprise Electric Co.,* supra.

Plaintiffs are adamant in their insistence that their respective complaints state causes of action against the electric company within the purview of the Employers' Liability Law. They observe, and we think correctly, that the five points of attack relied upon by the respondent electric company may properly be resolved into one, namely, the absence of and necessity for an allegation that the electric company had control over the means by which the decedents Myers met their deaths.

As against the defendant Staub the plaintiffs allege, as the primary element of his negligence, the presence of high voltage transmission lines controlled, operated and maintained by him too close to the ground. The "control", by which they seek to establish liability in the electric company, is predicated upon the electric company's alleged ability to cut Staub's power at its source and thus avoid the dangers incident to the inadequate insulation of the power line on the Staub premises arising from suffering the high voltage lines to remain hanging too close to the ground. Concerning such a situation, plaintiffs assert that "No better 'insulation' existed than the cutting off of the power at its source". In essence, plaintiffs contend for a species of "remote control" in the electric company as a basis for its liability to plaintiffs, that is, "remote" from the instrumentality which caused the Myerses' deaths.

Plaintiffs epitomize their concept of the electric company's "control" by claiming that the complaint alleges "in effect" that the electric company "failed to provide that 'insulation' within its control, i.e., cutting off the supply of electrical energy, when it had knowledge of the fact that such insulation was required."

Plaintiffs rely upon *Clayton v. Enterprise Electric Co.*, supra, and *McKay v. Pacific Bldg. Materials Co.*, 156 Or 578, 68 P2d 127, in support of their contention that, as employees of defendant Staub, the decedents had the protection of the Employers' Liability Law in their relation to the electric company.

The facts in the case of *Clayton v. Enterprise Electric Co.*, supra, are in many respects similar to the facts as alleged in the complaints of the appellants here.

The action in the earlier case was brought by a surviving spouse under the Employers' Liability Law against an electric company which had supplied electric current to Clayton's employer Roe. The fundamental difference between the Clayton case and the one at bar is that in the former the plaintiff alleged and proved "that the defendant [electric company] was the owner and controlled and operated the transmission system, and the wires and appliances by which the currents of electricity were carried into and connected with the motor and pumping machinery" of decedent's employer Roe (82 Or 151). We also learn from a reading of Clayton that the defective switch was the immediate cause of the employee's electrocution and that this switch was a part of the equipment which the Enterprise Electric Company owned and installed.

In the case at bar, however, there is no allegation whatsoever that the electric company had any ownership or control over the wires which were involved in the deaths of plaintiffs' decedents. Indeed, the plaintiffs here with precise particularity allege a directly contrary situation in Paragraph III of their respective complaints where, it will be observed, they say "said lines were operated, controlled and maintained by defendant Raymond R. Staub [decedents' employer]" and where in Paragraph IX of their respective complaints they charge that defendant Staub "installed, operated, controlled and maintained * * * said high voltage transmission lines".

This court in the Clayton case expressly recognizes the rule that the supplier of electrical energy is not responsible under the Employers' Liability Law for injuries caused by equipment over which it has no supervision or control, and our judgment in that case

was predicated upon the fact that the electric company did have such control.

The Clayton case has been criticized as containing "language more sweeping than was necessary". *Turnidge v. Thompson,* 89 Or 637, 653, 175 P 281. Notwithstanding that Clayton is vulnerable to this charge, it still compels the conclusion that the Employers' Liability Law does not cover a situation in which there is no third party control of the injured employee or any control of the offending instrumentality involved. There is nothing in the complaints of the plaintiffs in this matter which remotely indicates that the electric company had any ownership or claimed any ownership in the offending transmission lines or in any part of the same that were situated on the Staub property or that it had "installed, operated, controlled and maintained" the same or any part thereof, as was evident in the Clayton case.

There are no allegations in the complaints from which it may be inferred that the defendant electric company had any relationship to the Myerses as Staub's unfortunate employees. The electric company's relationship, if any, to the instrumentality causing the deaths of the Myerses, that is, to the defective insulation of the wires on Staub's property, can be gleaned only by inferring that, as the supplier of the electricity flowing over said lines, the company could at some place "insulate" the same by cutting off the power at its source.

The other decision relied upon by plaintiffs in support of their proposition is *McKay v. Pacific Bldg. Materials Co.,* supra, 156 Or 578, 68 P2d 127. This case also recognizes the rule that control of the instrumentality involved is the essential element to a cause of action under the Employers' Liability Law

against a defendant who is not the employer of the injured employee. In that case, as in the Clayton case, the offending instrumentality was under the control of one other than the employer of the injured employee. In our own research we are unable to discover any case decided by this court in which a third party other than the injured party's employer was held to liability under the Employers' Liability Law when such third party had no control over the instrumentality causing the death or injury to the employee.

It is also of interest to observe that every act of negligence charged against the electric company in the complaints is referable solely to a duty of the master to his employees, namely, to furnish them a safe place in which to work. Under the complaints as drawn, this duty was beyond question incumbent upon Staub as the employer of plaintiffs' decedents. Upon him, and him alone, reposed the duty, required by the Employer's Liability Law in the instant matter, to see that "In the transmission and use of electricity of a dangerous voltage, full and complete insulation is provided at all points where * * * employes of the owner * * * transmitting or using the electricity are liable to come in contact with the wire". ORS 654.310(7). The supposed failure of the electric company to control the electric current flowing over the improperly insulated wires, which the complaints tell us the defendant Staub owned and "installed" and "were operated, controlled and maintained" by him upon his property, was not the proximate cause of the deaths of plaintiffs' decedents but, on the contrary, is properly attributable to the duty of the defendant Staub, as the Myerses' employer and master, to furnish the Myerses as his employees a safe place in

which to work. See *Warner v. Synnes et al.*, 114 Or 451, 466, 230 P 362, 235 P 305, 44 ALR 904.

*Drefs v. Holman Transfer Co. et al.*, supra, 130 Or 452, 280 P 505, was an action for the recovery of a death claim under the Employers' Liability Law. The decedent Drefs at the time of the accident was an employee of Pacific Telephone & Telegraph Company and engaged in behalf of that company in making an excavation in one of the streets of Portland. While so doing, he was exposed to the dangers incident to the operation of trucks of the defendant Holman Transfer Company and the operation of vehicles of the defendant Arrow Ambulance Company; and as a result of their negligent and careless operation, plaintiff's decedent was run against and killed. No negligence was charged against the telephone company as decedent's employer, nor was it made a party to the action. Demurrers to the complaint by the transfer company and the ambulance company were sustained on the ground that it did not state a cause of action against them under the Employers' Liability Law.

In the matter now before us, as in the Drefs case, there is no intermingling of duties and employees of the Myerses' employer and those of the defendant electric company in the work being prosecuted on the Staub property, nor are there any interlocking interests. This court in the Drefs case, after observing that the Employers' Liability Law "was a beneficent statute and as construed by this court, which has gone to the extreme of liberality in construing it, has resulted in extending to employees in hazardous occupations a degree of protection theretofore unknown", then proceeds to review the cases which had been decided up to that time wherein such liberality was exemplified by the appearance of "interlocking inter-

ests between the different employers." *Drefs v. Holman Transfer Co. et al.,* supra, at page 455. Necessarily in this review of cases of that character, Mr. Justice McBRIDE included *Clayton v. Enterprise Electric Co.,* supra, 82 Or 149, 161 P 411, as the predecessor of those which followed, namely, *Turnidge v. Thompson,* supra, and *Rorvik v. North Pac. Lumber Co.,* 99 Or 58, 190 P 331, 195 P 163. Concluding this analysis, Mr. Justice McBRIDE then quotes from the Rorvik case and observes (130 Or 459):

> " 'In view of the able and exhaustive analysis of our Employers' Liability Act by Mr. Justice HARRIS in Turnidge v. Thompson, 89 Or. 637, 175 Pac. 281, which covers every phase of the question as to the persons who are within or without the act, we deem any attempt at further analysis or distinction unnecessary. From the lucid interpretation in that case and in other cases hereafter mentioned, we deduce the rule that the Employers' Liability Act does not extend to the protection of the general public as such, but that it does extend its protection to employees of the particular person owning or operating dangerous machinery or engaged in hazardous employments, and to other persons or employees of other corporations whose lawful duties require them to be or work about such machinery, or expose themselves to the hazards of the machinery or appliances in use by the owner thereof.'
>
> "This decision we have followed ever since, and *we do not think that it extends to any case where the person charged with doing an injury sustains no such relation by contract or otherwise different from that which he sustains to the whole public.*" (Italics ours.)

 Applying the foregoing rule laid down by Mr. Justice McBRIDE in the Drefs case to the instant matter, we find nothing in the complaints before us which

alleges the creation of a relationship between the defendant electric company and plaintiffs' decedents "by contract or otherwise different from that which * * * [the electric company] sustains to the whole public."

"Control", in the sense that a third party is to be subjected to liability under the Employers' Liability Law as we conceive the meaning of "control" and contrary to the conception of the "remote" or nebulous "control" as defined by plaintiffs, means a primary control of the physical instrumentalities immediately in use and which are the media of the injuries or death giving rise to a claim of damage under that law. Here it would be extravagant to say that the ability to cut off or turn on power flowing over Staub's wires, when not installed, owned or controlled by the electric company, is that kind of "control".

The application of "control" sought to be made here by the appellants is not the intent of the law; and such an unwarranted judicial extension of the act might, as Mr. Justice McBride warns in the Drefs case, lead to the repeal of this most beneficent and enlightened legislation.

Whatever merit may be found in appellants' argument is encompassed in their statement of the common law rule to the effect that "the supplier of electrical energy is liable for injury caused on the land of another where it knowingly supplies electrical energy to a defective or hazardous condition thereon." It is appellants' position that they can, if necessary, "borrow" a cause of action from the common law and with it enjoy the advantages bestowed by the Employers' Liability Law. It is a proposition which we cannot and do not sanction. Indeed, the seed to our

disapproval found earlier expression in *Drefs v. Holman Transfer Co. et al.,* supra, where we said, at page 459:

"* * * The Employers' Liability Act is especially designed to protect workers in hazardous employment from the negligence of their employers, or those having some relation to the work or place of work or means required to prosecute the work in which they are engaged, *and not as a substitute generally for injuries for which other statutes or the common law afford redress.*" (Italics ours.)

The lower court is affirmed.