Argued February 11, affirmed April 8

BYERS ET AL *v.* HARDY ET AL

337 P. 2d 806

*Carl D. Etling,* Portland, argued the cause for appellants. With him on the brief was Harry H. Daniel, Portland.

*Wayne A. Williamson,* Portland, argued the cause for respondent Don M. Hardy. With him on the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

*James K. Buell* argued the cause for respondent J. S. Lindseth. On the brief were Phillips, Coughlin, Buell & Phillips, Portland.

Before McAllister, Chief Justice, and Lusk, Warner and Sloan, Justices.

SLOAN, J.

The events which culminated in this action seem fateful and were tragic. Plaintiffs' decedent, whom we shall refer to as Byers, surrendered his life in a merciful but futile effort to save the life of another. These plaintiffs, the widow and minor children of Byers, sought, by this means, to assert a third party action against the defendants within the benefits of the Employers' Liability Act. The defendants responded with supplemental pleadings which challenged their right to maintain the action. ORS 656.324(3). The trial

court sustained the defendants and plaintiffs appeal. A telling of the facts will clarify the issues to be considered.

On November 20, 1953, the defendant Lindseth was engaged, as a general contractor, in building a house on Willamette Boulevard in Portland. The defendant Hardy was a subcontractor for the installation of plumbing. A part of the latter's responsibility included, of course, the sewer connection between the house and the city sewer main in the street right of way of Willamette Boulevard. Hardy's duty was to do all necessary excavation and lay all sewer pipe from the house to the main. It was not his duty to make the actual connection with the sewer main itself. Regulations of the Portland City Engineer required the actual connection to be made by employes of the city's Public Works Department. It is necessary to emphasize this particular requirement for reasons we will later mention. It is important to bear in mind that in the course of making the connection it was necessary for Hardy to excavate sufficiently to expose the sewer main. When this was accomplished the employes of the city were to be notified and they, in turn, would come to the site, cut the sewer main and connect the lateral line to the house. Such was the limit and extent of the function of the city employes.

The topography of the ground at the location mentioned was such that it was necessary to dig a shaft something more than 18 feet in depth in order to expose the sewer main. As indicated, the excavation of this shaft was the duty of defendant Hardy. The actual work was performed by one Leonard Denniston, an employe of Hardy. In early afternoon of the given day he had succeeded in digging the shaft of about four feet in diameter to a depth estimated to

be about 18 feet. He had apparently not yet reached the sewer main. The soil was porous and sandy. No shoring or bracing was used to sustain the soil and protect the excavator, Denniston. The cave-in that almost inevitably resulted appears the more tragic in view of the probability that the type of soil involved would not hold an excavation of that depth.

Immediate efforts to reach him by removing the dirt which had buried him proved hopeless. The city fire department and Bureau of Public Works were summoned. When these forces arrived they assumed complete command of the subsequent rescue efforts. It became apparent that the only means of reaching Denniston would be to dig a second shaft close by and then extend a lateral tunnel at the depth at which he was thought to be. This shaft had to be dug through the paved portion of the city street. When this decision was made, Byers entered the scene and became an actor in the events that led to his death. At that time he was a foreman in charge of a "compressor gang." His normal place of employment was at Stanton Yard, a city repair and maintenance depot. Byers' crew was called to break up the paving with the use of a jack hammer. Byers completed this task but did not cease his efforts with the performance of that duty and continued to assist in the hurried excavation it was hoped would rescue the buried Denniston. A power shovel was used for this purpose but apparently it was also necessary for men to be in the pit being dug working with hand shovels to hurry the filling of the power shovel. Byers was one of these men. The evidence, by a series of pictures taken by a newspaper photographer, graphically pictures the events that followed. We are not told the estimated depth this pit or shaft had attained but it appears to have been at a depth approximat-

ing 15 feet or more. The same failure of care again intervened; no shoring or bracing was used to sustain the sandy walls. At an instant when Byers was at the bottom of the excavation the walls of the pit also gave way and he was buried and died before he, in turn, could be uncovered. Another workman was partially covered but it was possible to extricate him. It should be noted for the small honor we can here accord him that Mr. Byers was exposing himself to obvious risk without order or direction. His effort and sacrifice were directed toward the then almost hopeless chance of saving the life of one who, for all that appears, was a total stranger to him. His acts entitle him to greater notice than our means afford.

Upon these facts the plaintiffs have attempted to formulate a cause of action to bring them within the advantages of the Employers' Liability Act. They allege that at the time of the accident there was joint supervision and control of the premises by defendants and Byers' employer, the city; and a commingling of employes; that the defendants' initial undertaking to excavate for the sewer line from the house to the street and the laying of the necessary sewer pipe imposed a continuing duty and responsibility on these defendants.

Thus, plaintiffs do not, and could not, contend that the rescue effort itself was a joint endeavor. They resort to the necessity of the respective complementary functions of Hardy and the Public Works Department in making the intended sewer connection as the basis of their action. We have already emphasized that had disaster not struck the city employes would have made the connection by utilizing the excavation made by Hardy. Plaintiffs also contend that this mutual or joint responsibility continued on into the rescue opera-

tion. Issue was joined by the filing of supplemental answers by defendants as required by ORS 656.324(3).

The answers allege that at the time of the accident both the city and the defendants, and their respective employes, were subject to the provisions of the Workmen's Compensation Act; that prior to filing this action plaintiffs had filed a claim with the Industrial Accident Commission and had received the award provided for the death of a workman; that at the time of the fatal accident to Byers his employer had exclusive supervision and control over the work, machinery and premises which were involved. It is then alleged that "if upon the forthcoming of proof it be established that [the defendants were] in charge of and responsible for the work being done  *  *  *  at the time and place of the accident  *  *  *  [the] accident occurred on premises over which the employer of plaintiffs' decedent, and the defendants, had joint supervision and control within the purpose, purport and meaning of the Workmen's Compensation Law of Oregon  *  *  *"; that the benefits of that Act thereby provide the exclusive remedy available to the plaintiffs and this cause of action cannot be maintained. As provided by the statute last cited, this issue was presented to the trial court and evidence presented by both parties. The trial court found for the defendants.

The defendants contended in the trial court and here that allegations which permit a third party action within the Employer's Liability Act must, of necessity, allege such joint control and supervision as will bar a third party action by ORS 656.154. Our disposition of the case does not require the determination of this issue. We look first to see if the evidence will sustain the defendants' allegations that at the time of the acci-

dent the city was in complete control. If so, plaintiffs have no cause against the defendants.

The Employers' Liability Act makes no provision for a so-called third party action similar to that found in the Workmen's Compensation Act. It is only the reference of risk and danger to "the public" (ORS 654.305) which permits such an action to be brought at all. This court has consistently held that it is not every member of the public that is thus protected. It is only those whose employment or duties require them to be about machinery of an employer other than his own or whose duties may require such person to expose himself in or about hazardous conditions or structures of such other employer which are prohibited or circumscribed by the Act. It must be a hazard or risk which the employer has created or permits to exist and which is within the control of the employer sought to be held. There must likewise be a commingling of function or duty of the injured person and the employes of the employer. In other words, the acts or omissions of the employer which give rise to a cause of action in behalf of an injured member of the public requires active and direct participation on the part of the employer. *Turnidge v. Thompson,* 98 Or 637, 175 P 281; *Rorvik v. North Pac. Lumber Co.,* 99 Or 58, 190 P 331, 195 P 163; *Drefs v. Holman Transfer Co.,* 130 P 452, 280 P 505; *Myers v. Staub,* 201 Or 663, 272 P2d 203.

Unfortunately for plaintiffs, we find the evidence to be most conclusive against their contentions. As we have indicated, the only possible joint activity upon the part of these defendants and Byers' employer, the city, was the requirement that some unknown employe of the sewer department would, when notified of the readiness for connection, come to the scene and make the actual connection to the city sewer main. The sole par-

ticipation of this undesignated sewer department employe with the defendants or their employes would be that the city employes would, when called upon, use the excavation made by defendants' employes. Byers was not employed by the sewer department but a compressor gang, as we have described. He would have had no part in the intended activity nor any possible connection with it.

On the other hand after the first cave-in occurred, entrapping Denniston, and the equipment and manpower of the city were engaged for rescue purposes, the entire operation from that point on was within the exclusive control and supervision of the city. In fact the only evidence as to even the whereabouts of the defendants during the hours of the rescue attempt would place them behind the barricade thrown up by the police to hold back the curious. They had no participation either in person or by employe or by the use of their machinery. The size of the pit, its location, the manner in which it was dug and the function of those who were actively engaged were all determined by city employes. In *Myers v. Staub,* supra (201 Or 663, p 676), it was said:

> " 'Control,' in the sense that a third party is to be subjected to liability under the Employers' Liability Law as we conceive the meaning of 'control' and contrary to the conception of the 'remote' or nebulous 'control' as defined by plaintiffs, means a primary control of the physical instrumentalities immediately in use and which are the media of the injuries or death giving rise to a chain of damage under that law."

Similar expression is found in the other cases previously cited.

What we have already said should suffice to demon-

strate in this instance there simply was no intermingling of employes nor any control by defendants of the responsibility and duties. The "remote" link between the connection of the sewer by city employes and the excavation resulting in Byers' death is insufficient to meet the test imposed by the former decisions of this court. We conclude that the allegations of defendants that the hazards which caused Byers' death were exclusively within the control and supervision of the city must be sustained. As we have already indicated, it is not necessary to determine the extent of any joint control on the part of defendants. There was no control at all on their part.

The judgment is affirmed.