Argued and submitted July 14, 1982, affirmed in part, reversed in part and remanded for new trial April 26, 1983

MILLER,
*Petitioner on review,*

*v.*

GEORGIA-PACIFIC CORPORATION et al,
*Respondents on review.*

(CA 18589; SC 28400)

662 P2d 718

Robert H. Grant, Medford, argued the cause for petitioner on review. With him on the briefs was Grant, Ferguson & Carter, Medford.

Robert L. Cowling, Medford, argued the cause for respondent Georgia-Pacific Corporation on review. On the brief were Brian L. Pocock and Cowling, Heysell & Pocock, Medford.

Daniel M. Holland, Eugene, argued the cause for respondent Consolidated Equipment Sales, Inc., on review. With him on the brief was Jaqua & Wheatley, P.C., Eugene.

PETERSON, J.

**PETERSON, J.**

This case involves interpretation and application of the Oregon Safe Employment Act (ORS 654.001-.295, ORS 654.991) and what is popularly referred to as the Employer's Liability Act (ELA) (ORS 654.305-.335). The questions arise incident to a damage claim by a worker injured as the result of alleged negligence of two defendants, neither of whom was the plaintiff's employer. The trial court directed a verdict in favor of both defendants. The Court of Appeals reversed and remanded for a new trial as to the defendant Consolidated Equipment Sales, Inc. (Consolidated) and affirmed as to the defendant Georgia-Pacific Corporation (GP). We affirm as to GP, and affirm in part and reverse in part as to Consolidated.

A brief overview of the applicable statutes will assist in understanding the issues. Oregon has long had an Employer's Liability Act and a safety act.[1] In 1973, the legislature enacted the Oregon Safe Employment Act, Or Laws 1973, ch 833. It retained many provisions from previous safety legislation (referred to in our earlier decisions as the "safety code" or "safety act"), gave the Workers' Compensation Board greater regulatory power, and provided for sanctions and criminal penalties. ORS 654.022 states that "[e]very employer, owner, employe and other person shall obey and comply with every requirement of every * * * rule or regulation made or prescribed by the department [the Workers' Compensation Department] * * * relating to or affecting safety and health in employments or

---

[1] A historical summary is contained in *Hillman v. North Wasco Co. PUD.,* 213 Or 264, 287-96, 323 P2d 664 (1958). *See also* Skelton, *Workmen's Compensation in Oregon: Ten Years After,* 12 Willamette L J 1, 6-7 (1975). The term "Safety Code" has been used variously in our decisions to describe either the statutes or the rules and regulations adopted pursuant to the statutes. In this opinion, when we use the term, we have in mind the Oregon Safe Employment Act, ORS 654.001-.295,. 991, and the safety regulations promulgated thereunder pursuant to ORS 654.025 and ORS 654.035. These regulations are found in OAR chapter 437, which is designated as "The Oregon Occupational Safety and Health Code." However, some of the regulations promulgated under the safety act, ORS chapter 654, are still identified as the "Oregon Safety Code for Places of Employment," and are listed as "chapters" under OAR chapter 436. The 436 chapters are in the process of revision from their designation as "Chapters" in chapter 436 to "Division" in OAR chapter 437.

places of employment * * *."[2] ORS 654.025 authorizes the Director of the Workers' Compensation Department and the Workers' Compensation Board to promulgate rules for the purpose of carrying out their functions under the Law. ORS 654.035(1) provides:

"The director may, by general or special orders, or by regulations, rules, codes or otherwise:

"(1) Declare and prescribe what devices, safeguards or other means of protection and what methods, processes or work practices are well adapted to render every employment and place of employment safe and healthful."

In a number of cases decided before 1973, this court held that a violation of a safety code rule or regulation establishes negligence per se upon a negligence claim and constitutes a violation of the ELA, *Blaine v. Ross Lbr. Co., Inc.,* 224 Or 227, 234, 355 P2d 461 (1960); *Arnold v. Gardiner Hill Timber Co.,* 199 Or 517, 523, 263 P2d 403 (1953); *Baldassarre v. West Oregon Lbr. Co.,* 193 Or 556, 561, 239 P2d 839 (1952). This is so whether the claim is against one's employer or against an employer whose activities created a risk of injury to the employees of others whose work required them to come within such risk of injury. *Blaine, supra,* 224 Or at 234-35.

First enacted in 1910 by initiative petition, the ELA requires a higher degree of care for employers and others having charge of work involving risk or danger to employees. ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and

---

[2] The full text of ORS 654.022 is as follows:

"Every employer, owner, employe and other person shall obey and comply with every requirement of every order, decision, direction, standard, rule or regulation made or prescribed by the department in connection with the matters specified in ORS 654.001 to 654.295, or in any way relating to or affecting safety and health in employments or places of employment, or to protect the life, safety and health of employes in such employments or places of employment, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction standard, rule or regulation."

limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

This court has repeatedly construed the ELA "to apply to employees of a person other than the defendant, if their work requires them to come within the risk of injury from the defendant's instrumentalities." *Blaine, supra,* 224 Or at 235; *See Myers v. Staub,* 201 Or 663, 668, 272 P2d 203 (1954); *Rorvik v. North Pac. Lumber Co.,* 99 Or 58, 70, 190 P 331, 195 P 163 (1920).

■　Before the ELA can be made the basis of a claim for relief by an injured worker suing a defendant other than an employer of the worker, however, the defendant must be in charge of or have responsibility for work involving risk or danger in either (a) a situation where defendant and plaintiff's employer are simultaneously engaged in carrying out work on a common enterprise, or (b) a situation in which the defendant retains a right to control or actually exercises control as to the manner or method in which the risk-producing activity is performed. *Wilson v. P.G.E. Company,* 252 Or 385, 391-92, 448 P2d 562 (1969); *Thomas v. Foglio,* 225 Or 540, 545-57, 358 P2d 1066 (1961). With these general principles in mind, we turn to the disposition of the case before us. The facts are without substantial dispute.

# I

## THE FACTS

GP operates a plywood mill at Toledo, Oregon. In 1976, GP ordered a chip dozer tractor from Consolidated. The tractor was equipped with a blade which had been manufactured by Medford Steel Division, CSC, Inc. (Medford). Plaintiff was the general manager of Medford.

In February, 1977, the dozer, with the blade attached, was delivered by Consolidated to GP. Consolidated warranted the blade against breakage for one year and agreed to repair the blade during the warranty period at its expense. The cutting edge of the blade was 28 feet long, 12 inches wide, and weighed 1,400 pounds.

After five days of operation, the blade broke. Consolidated repaired it. After five more days of operation, the blade again broke. The GP maintenance supervisor, Jack Kirkland, called the Consolidated service manager, Dave Privat. Privat called Medford, and arrangements were made for plaintiff to go to Toledo to see the broken blade.

On March 16, 1977, plaintiff arrived at the Toledo site with another Medford employee, Ray Morton, Medford's shop superintendent. Plaintiff's purpose in going to the Toledo mill was to inspect the broken blade in order to determine what Medford should do to correct the situation.

Upon his arrival, plaintiff met Kirkland. Thereafter, Kirkland, Morton, plaintiff, Privat, and Joe Loughry, another Consolidated employee, went to a chip pile in which the blade was imbedded. Plaintiff wanted to examine the blade, so Privat told Loughry to take a Consolidated pickup truck, hook a chain from the back of the pickup to a brace which was sticking up out of the chip pile and pull the blade from the chips. Loughry did not know whether he looked to his rear between the time he started and the time that the plaintiff was struck. After the connection was made, Loughry gave the truck a "bit of a jerk," the cutting edge rose up in the air and the blade swung sideways from the pile and struck the plaintiff in the legs, fracturing both ankles.

There was also evidence that GP had a hydraulic crane which could have been used to lift the blade from the chip pile. The plaintiff claimed that GP was negligent in failing to provide and require that the mobile crane be used to lift the blade from the chip pile.

## II
## THE PLAINTIFF'S THEORIES OF RECOVERY, THE DEFENDANTS' DEFENSES, AND THE COURT RULINGS

The plaintiff's amended complaint contains two counts. The first count is based on a theory of common law negligence and contains allegations of specific acts of negligence and specific safety code violations. The second count incorporates by reference the acts of alleged negligence and the alleged violations of the safety codes and concludes

with a typical ELA allegation that the work "involved risk and danger," that "the plaintiff was an employee exposed to said risk and danger" and that the defendants "failed to use every device, care or precaution which it is practicable to use for the protection and safety of life and limb and that the defendants failed to furnish plaintiff a place of employment which was safe * * *."

In their answers, the defendants affirmatively alleged that the plaintiff was contributorily negligent and that at the time of the accident, plaintiff "was a foreman or other person having charge of the particular work then being carried on * * * and * * * was under a duty to see that the requirements of the Employer's Liability Act were complied with at that time." This defense involves the so-called "vice-principal rule."

At the conclusion of the case, the trial judge granted directed verdicts and entered judgment in favor of both defendants. Plaintiff appealed to the Court of Appeals, which reversed and ordered a new trial as to the defendant Consolidated, and affirmed the directed verdict in GP's favor. The Court of Appeals held:

1. Although GP was the occupier of the premises where the incident occurred, it had no liability under either theory advanced by the plaintiff because it took no part in the activity—the moving of the blade—by direct participation in the enterprise or by exercising control over the manner or method in which the work was conducted. 55 Or App at 362 (citing *Wilson v. P.G.E. Company,* 252 Or 385, 391, 448 P2d 562 (1969)).

2. Plaintiff's ELA evidence against Consolidated was, as a matter of law, insufficient because plaintiff was "in charge of the job of inspection" and therefore barred under the application of the "vice-principal rule" announced in *Howard v. Foster & Kleiser Company,* 217 Or 516, 543, 332 P2d 621, 342 P2d 780 (1959). 55 Or App at 363-64.

3. The safety code violations of the Oregon Safe Employment Act and regulations promulgated thereunder, if any, are "moot" because evidence of such violations is applicable only to an ELA claim. 55 Or App at 365.

4. There was evidence from which a jury could find that Consolidated was guilty of common law negligence in the manner in which it moved the blade and therefore a new trial was ordered as to Consolidated on the common law negligence claim. 55 Or App at 364-65.

■ We agree with the analysis and holding of the Court of Appeals concerning the directed verdict in favor of GP and will not repeat the analysis and holding here. We also agree with the Court of Appeals that a jury question existed on plaintiff's negligence claim against Consolidated, a ruling upon which no review has been requested. However, the Court of Appeals erred (1) in holding that the evidence was insufficient to create a jury question under plaintiff's ELA claim because of the application of the vice-principal rule, and (2) in holding that the safety code did not apply. These questions are discussed below in that order.

### III

### APPLICATION OF THE VICE-PRINCIPAL RULE

■ The vice-principal rule derives from ORS 654.315, which states:

> "The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to · 654.335 are complied with."

Simply stated, the vice-principal rule is that an employee to whom an employer delegates the duty to see that the statutory requirements of ORS 654.305 to ORS 645.335 are carried out has no claim against an employer for a violation of those statutes if the injuries result from the employee's failure to see that the required safety measures are taken. *Skeeters v. Skeeters,* 237 Or 204, 220-21, 389 P2d 313, 391 P2d 386 (1964); *Howard v. Foster & Kleiser Company,* 217 Or 516, 536-542, 332 P2d 621, 342 P2d 780 (1958).

As *Skeeters* and *Howard* make clear, the premises underlying the rule are these: ORS 654.315 imposes upon the foreman or other persons having charge of the work the responsibility to "see that the requirements of ORS 654.305 to ORS 654.335 are complied with." Without the failure of the person "having charge of the particular work" to

exercise the required care, the person in charge "would not have been injured and there would have been no delict to attribute to the employer." *Galer v. Weyerhaeuser Timber Co.,* 218 Or 152, 172, 344 P2d 544 (1959).

In those cases in which the rule has been applied to bar recovery the evidence established that the plaintiff was in charge of and actively involved in the *particular work* which caused the injury. In *Howard* the plaintiff was a journeyman billboard poster whose work involved the use of a ladder and whose duties included inspection of the very ladder which failed. In *Galer* the plaintiff was a pipefitter foreman whose duties included the responsibility "to take precautions so that all pipe fitting work entrusted to him and his crew would be done in a safe manner." 218 Or at 168. After a scaffold had been erected, the plaintiff mounted the scaffold to make an inspection and slipped and fell. He sued Weyerhaeuser claiming that Weyerhaeuser was negligent in furnishing slippery planking, planking without cleats, and in neglecting to inspect the scaffolding. In denying recovery, we stated:

> "* * * Had he at that moment sent one of his crew of maintenance pipefitters up the scaffold, he would have owed a duty to have seen that the scaffold was safe. He owed no less a duty to himself. Accordingly, if he neglected a duty on the morning of his injury which he now wishes to charge to Weyerhaeuser *as a basis for this action,* the neglect was his own. The defendant Weyerhaeuser Timber Company, being an impersonal inanimate entity, was forced to resort to individuals, like the plaintiff, to perform its functions and duties. It was his duty to see to it that the neglect of which he complains did not occur." 218 Or at 169-70.

■ The plaintiff herein did not decide how the blade would be removed or who would remove it, nor did he participate in its removal. We are hard put to find any evidence that plaintiff was a foreman or other person "having charge of the particular work," as that term is used in ORS 654.315. We stress that the statute uses the phrase "requires charge of the *particular* work" (emphasis added); that is, the very activity giving rise to the injury. Plaintiff was not involved in the "particular work"—the extrication of the blade—other than by being there. On these facts

there is no evidentiary basis for the application of the rule. The trial court erred in directing a verdict for Consolidated upon this basis. We therefore reverse the trial court and the Court of Appeals on this ground, and order a new trial for plaintiff on both the ELA and the common law counts.[3]

## IV
## APPLICATION OF THE OREGON SAFE EMPLOYMENT ACT AND REGULATIONS PROMULGATED THEREUNDER

■ As stated at the beginning of this opinion, the Oregon Safe Employment Act was enacted in 1973. This code was enacted for essentially the same reasons as its predecessor safety acts were enacted—"to assure as far as possible safe and healthful working conditions *for every working man and woman in Oregon * * *.*" (Emphasis added.) ORS 654.003.[4] It aims to achieve occupational health and safety in "* * * every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employe works * * * and every place where is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation * * *." ORS 654.005(9). Although adherence to safety standards may be of particular importance in "work involving risk or danger to the employes" (the workplace of the ELA, ORS 654.305), the standards apply to all workplaces. The Court of Appeals erred in limiting the application of the safety codes to only ELA workplaces. On retrial, the court should first determine whether there is evidence which tends to show that a code standard has been violated. If so, the applicable code provisions should be submitted to the jury. under appropriate negligence per se instructions as to both counts in the plaintiff's complaint.

We add, however, that safety code standards are minimum standards. A showing of compliance with such minimum standards does not foreclose a plaintiff from

---

[3] We are not foreclosing Consolidated, on retrial, from attempting to create a jury question on this defense. On the record before us, no jury question exists.

[4] *See generally* Skelton, *Workmen's Compensation Law in Oregon: Ten Years After,* 12 Willamette L J· 1, 6 (1975).

pleading and proving that other precautions could and should have been taken, either under the general negligence standard or under the ELA standard.

Accordingly, the decision of the trial court and the Court of Appeals as to GP is affirmed. The Court of Appeals decision reversing the trial court and awarding a new trial against Consolidated on the negligence count is affirmed. The Court of Appeals decision affirming the trial court removal of the ELA count against Consolidated is reversed, and the case is remanded to the trial court for a new trial against Consolidated on both the ELA and the negligence count.