Argued and submitted April 10, reversed August 7, reconsideration denied September 13, petition for review allowed December 3, 1985 (300 Or 367)

**SACHER,**
*Respondent,*

*v.*

**BOHEMIA, INC.,**
*Appellant.*

(16-80-01732; CA A31373)

704 P2d 528

Richard A. Roseta, Eugene, argued the cause for appellant. With him on the briefs was Flinn, Brown & Roseta, Eugene.

Jacob Tanzer, Portland, argued the cause for respondent. With him on the brief were Ball, Janik & Novack, Portland and Wiswall & Hendricks, Springfield.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action to recover damages from defendant, who was not his employer, for an injury sustained while operating a table saw belonging to his employer and located in defendant's plant. Plaintiff's case proceeded only under the Employer's Liability Act (ELA). ORS 654.305.[1] The claim was submitted to the jury, which returned a verdict in plaintiff's favor. Defendant appeals, arguing that the trial court erred in denying its motion for a directed verdict.[2] We reverse.

Plaintiff's employer, Cascade Handle Company, Inc. (Cascade), operated a square mill table saw on the premises of defendant's sawmill. In Cascade's operation, plaintiff and one other employe produced squared-off pieces of wood, which were shipped to Cascade's Eugene plant to be formed into broom handles. The table saw was located on a platform one floor below defendant's sawmill equipment. The platform was designed and built by Cascade, although the specifications for it may have been provided by defendant. Cascade also designed, fabricated, installed, operated and maintained the saw and was responsible for its security and the safety of its operation. Defendant's employes never participated directly in the operation of Cascade's saw.

A conveyor carried scraps of waste wood from defendant's sawmill operation to a "hog" and a "chipper" for processing into fuel for the sawmill operation and chips for resale. The platform was located along this conveyor. Cascade's employes selected appropriate scraps from the conveyor to run through the saw. Waste wood from the saw returned to the conveyor to resume the journey to the hog and

---

[1] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

[2] Defendant also assigns as error two of the trial court's jury instructions concerning liability under the ELA, its admission and exclusion of certain testimony and its denial of motions for judgment notwithstanding the verdict and a new trial. We need not reach these issues because of our disposition of defendant's first assignment.

chipper. Cascade paid defendant a board foot price for its finished stock. It provided its own labor and supplies and was responsible for maintaining its equipment and paying its utilities. Defendant was not obligated to inspect, nor did it undertake to inspect, Cascade's operation or to provide for its safety, but it had the right to veto Cascade's hiring of any employe previously terminated by defendant.

Cascade's and defendant's operations were intertwined to a certain extent. Their economic interest were clearly interdependent. In addition, the employes of each assisted the other's operations to a limited degree. Cascade's employes assumed some responsibility for keeping the conveyor clear and moving. A metal detector stopped the conveyor when it carried a piece of metal, because metal would harm the chipper. The conveyor would stop when the metal piece was near Cascade's platform, and a Cascade employe would remove it. Cascade employes would also thaw out frozen pieces of wood on the conveyor in the morning to get the conveyor moving, if necessary. Cascade employes would occasionally make minor repairs on the conveyor but called defendant's employes to make major repairs. One of defendant's employes directed Cascade's placement of bundles of the finished wood stock for storage in defendant's yard and also loaded the bundles on Cascade's truck for shipment. One of defendant's employes also once repaired a chain on Cascade's storage table, which was separate from Cascade's saw. Defendant's saw filer would occasionally repair the blade on Cascade's saw if it was "burned." The two companies' employes belonged to the same union and took lunch and breaks together.

With those exceptions, defendant had nothing to do with the installation, operation, safety or maintenance of Cascade's saw. Cascade's employes thought that the saw was dangerous and so informed Cascade, but they never complained to defendant. Cascade posted operating and safety rules, which required that the machine be turned off during maintenance, repair and cleanup. It issued a rule specifically prohibiting its employes from using their hands or any part of their bodies to reach between moving parts of the saw. Plaintiff was injured when he reached into the saw to remove a large sliver of wood which was stuck in a roller on the saw. He did not first shut off the saw, nor did he ask his coworker to do

so. As he wiggled and pulled the wood, the saw blade struck his hand, causing severe lacerations.

Defendant was not plaintiff's employer. In order for it to be liable under ORS 654.305, plaintiff must show that defendant had "charge of, or [was] responsible for [the] work involving a risk or danger * * *." *See* n 1, *supra.* In this case, defendant concedes that it was engaged in a common enterprise with Cascade but argues that it did not have sufficient control over the risk-producing instrumentality, Cascade's saw, to be subject to liability under the ELA. *Wilson v. P.G.E. Company,* 252 Or 385, 391, 448 P2d 562 (1968), discusses the situation in which a defendant who is engaged in a common enterprise with a plaintiff's employer may be subject to liability under the ELA:

> "* * * When, as the result of the activities of defendant's employees or use of his equipment, a risk of danger is created which contributes to an injury to plaintiff who is the employee of another engaged in work on the same project, defendant has been considered to have sufficient control over the work to be subject to the duties imposed by the Act. This is so even though he might not have had actual control over the specific activity in which plaintiff was engaged at the time of his injury. * * *"

The requirement that defendant "control" the work activity or instrumentality causing the injury was defined in *Myers v. Staub,* 201 Or 663, 676, 272 P2d 203 (1954):

> " 'Control', in the sense that a third party is to be subjected to liability under the Employers' Liability Law * * * means a primary control of the physical instrumentalities immediately in use and which are the media of the injuries or death giving rise to a claim of damage under that law. * * *"

*Miller v. Georgia-Pacific Corp.,* 294 Or 750, 662 P2d 718 (1983), illustrates the proper application of the rule. Georgia-Pacific (GP) purchased a chip dozer tractor from Consolidated. Medford Steel Division, CSC, Inc. (Medford) manufactured the blade for the tractor. The plaintiff was Medford's general manager. The blade broke while the tractor was in use at GP's plant. Two Consolidated employes and two Medford employes, including the plaintiff, visited GP's plant to inspect the blade. The plaintiff wanted to examine the blade, and a Consolidated employe, under the direction of another Consolidated employe, hooked a chain from the back

of a Consolidated pickup truck to a brace to pull the blade from a chip pile in which it was embedded. In the process of moving the blade, the Consolidated employe gave the truck "a 'bit of a jerk' * * * and the blade swung sideways from the pile and struck the plaintiff in the legs, fracturing both ankles." 294 Or at 755.

The plaintiff sought to hold GP and Consolidated liable under the ELA and for common law negligence. The Supreme Court affirmed our holding that GP was not subject to liability under the ELA.

> "Although GP was the occupier of the premises where the incident occurred, it had no liability under either theory advanced by the plaintiff because it took no part in the activity—the moving of the blade—by direct participation in the enterprise or by exercising control over the manner or method in which the work was conducted. * * *" 294 Or at 756.

As to Consolidated, the court held that it could be subject to liability under the ELA. In reaching that decision, the court affirmed one aspect of this court's opinion:

> "* * * Viewing the evidence most favorably to plaintiff, we conclude that a reasonable person could find that Consolidated controlled the moving of the blade in pursuit of a common enterprise (inspection and ultimate repair of the broken blade) and that movement of a 28-foot cutting edge weighing 1400 pounds was specially dangerous. * * *" *Miller v. Georgia-Pacific Corp.,* 55 Or App 358, 363, 637 P2d 1354 (1981).

*Miller* is an application of the rule in *Myers v. Staub, supra,* that for a defendant to be liable under the ELA, it must have exercised "primary control of the physical instrumentalities immediately in use and which are the media of the injuries * * *." 201 Or at 676.

Plaintiff has not shown that defendant was in direct control of Cascade's saw to a degree sufficient to subject it to liability under the ELA. Defendant did not own the saw, nor did the activities of any of its employes contribute to the risk or danger. Defendant had no obligation to inspect the saw or undertake to see to its safe operation. The fact that defendant had an economic interest in Cascade's operation, or that it might have required Cascade to remove its entire operation from its sawmill, does not show the type of control over the

work activity or the injury-producing instrumentality that is necessary to establish liability under the ELA.

Contrary to plaintiff's assertion, *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961), does not suggest a different result. The plaintiff in that case was employed by a logging company as a loader. He was injured while removing tongs from a log which had been loaded on the defendant's truck; the defendant was not the plaintiff's employer. The log began to roll, and the plaintiff jumped onto a water tank located behind the truck cab. His boots slipped on the metal surface and he fell to the ground. The court held that, in order for a defendant to be liable under the ELA, its participation in a common enterprise with a plaintiff's employer "must be more than a common interest in an economic benefit which might accrue from the accomplishment of the task * * *." 225 Or at 547. The court held that a defendant may be liable under the ELA when the risk-creating activity

> "* * * call[s] for the use of equipment over which [defendant] has control and which, if not maintained with proper safeguards, necessarily exposes the employees of the other employer to an unreasonable risk in the course of carrying on the common enterprise. * * *" 225 Or at 549.

In this case, defendant did not exercise any direct control over the saw, which was under the exclusive control of Cascade. The case could be different, for example, if plaintiff had been injured while operating or repairing the conveyor, which appears to have been under defendant's direct control. No activity or equipment under defendant's control contributed to the risk that plaintiff would be injured. The trial court erred in denying defendant's motion for directed verdict.

Reversed.