Argued January 23; affirmed February 10, 1942

# JYLHA *v.* CHAMBERLAIN
### (121 P. (2d) 928)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Frank C. Hesse,* of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for appellant.

*A. C. Fulton,* of Astoria (G. C. & A. C. Fulton, of Astoria, on the brief), for respondent.

BELT, J. Plaintiff, a widow, is the mother of one Eric Jylha, who died intestate on the first day of July, 1941, at the age of 19 years, unmarried and without leaving any surviving widow or children. She commenced this action under and by virtue of the Employers' Liability Act (§§ 102-1601 to 102-1606, inclusive, O. C. L. A.) to recover damages on account of the death of her son, alleged to have been caused by the negligence of the defendant. A demurrer to the amended complaint was sustained and, upon refusal of the plaintiff to plead further, the action was dismissed. Plaintiff appeals.

■ It is conceded that, if the Employers' Liability Act has no application to the facts as alleged in the amended complaint, the plaintiff, as mother of the decedent, can not maintain this action. If the common law applies, the action must be maintained by the representative of the estate of the decedent: *Saylor v. Enterprise Electric Co.*, 106 Or. 421, 212 P. 477.

The demurrer admits the truth of the following material facts: At the time of the accident in question, April 28, 1941, the defendant Richard Chamberlain, a minor 19 years of age, was the owner of a Pontiac automobile and a "pick-up" delivery truck. The Pontiac, on account of ignition trouble, failed to work and was left temporarily at a service station at Miles Crossing, Clatsop county, about two miles distant from the home of the defendant. Defendant drove his delivery truck to Miles Crossing for the purpose of getting the Pontiac car. With the aid of Eric Jylha and one Gerald Johanson, he made an unsuccessful attempt to start the Pontiac by pushing it while in gear. Thereupon the car was towed by a rope—"with its engine in gear"—for some distance before the motor started. Johanson was driving the truck and Eric the Pontiac. Defendant followed, driving the Johanson car. After proceeding for a short distance, the Johanson car was parked beside the highway and the defendant then drove the Pontiac. Eric, "with the knowledge and consent" of the defendant, rode on the running board of the Pontiac, "ready to render to defendant such further services or assistance as might become necessary or as might be requested of him." When the motor was finally started, the Pontiac stopped and Eric "with defendant's knowledge and consent" proceeded to untie the tow rope. While Eric was standing between the two cars engaged

in untying the tow rope, defendant "permitted the driving mechanism of said car (Pontiac) to become engaged" and caused the car "to leap forward and with great force and violence" to crush decedent between the cars.

It is alleged that the Pontiac was defective in that the "clutch pedal thereof was not provided with a rubber pad, and the metal pedal thereof was well worn and smooth, so the operator's foot in engaging the same did not get a firm grip on the same and as a result caused the operator's foot to slip off from the same, all of which was well known to defendant." It is further averred "that it was practicable, without impairing the efficiency of defendant's said Pontiac automobile or the efficiency of the work or means of work then and there being pursued by defendant to have kept the driving mechanism of said automobile disengaged while deceased was so stationed between said two cars and while performing, and until he had completed the performance of, the duties of his employment."

Finally, it is alleged that the work in which the decedent was engaged involved the "operation of machinery" and the "use of dangerous appliances" and was a "risk or danger to the employees" within the contemplation of the Employers' Liability Act.

The two vital questions involved on this appeal are: (1) Was Eric Jylha an "employee" within the meaning of the Employers' Liability Act? (2) Was Eric, at the time of his injuries, engaged in a work within the purview of such act? If either or both of these questions be answered in the negative, plaintiff cannot prevail in this action. Counsel for plaintiff very properly concede that the act has no application if Eric was not an employee at the time of rendering such service: *Fitz-*

*gerald v. O.-W. R. & N. Co.*, 141 Or. 1, 16 P. (2d) 27; *Walters et al. v. Dock Commission*, 126 Or. 487, 266 P. 634, 270 P. 778; *Saylor v. Enterprise Electric Co.*, supra.

■ As stated in *Fitzgerald v. O.-W. R. & N. Co.*, supra:

"* * * in order to warrant a recovery by reason of the provisions of the Employers' Liability Act, it is necessary not only that it be shown that defendant was engaged in the kind of work embraced within the terms of that statute, that the plaintiff was defendant's employee acting within the scope of his employment and that the terms of his employment contemplated the performance by plaintiff of work involving risk and danger; but also that the proximate cause of plaintiff's injury was one included within the terms of the statute."

■ The purpose and object of the Employers' Liability Act is to protect and safeguard employees engaged in certain kinds of work embraced within the act which involve a risk or danger.

4■ In our opinion, the decedent was not an employee within the meaning of the act. The word "employee", as used in the act, must be considered in its ordinary acceptation and meaning: 35 Am. Jur. 849. In a general sense, an employee is one who renders service for another for wages or salary: *Shields v. W. R. Grace & Co.*, 91 Or. 187, 179 P. 265; *Helliwell v. Sweitzer*, 278 Ill. 248, 115 N. E. 810. The relationship of employer and employee, or master and servant, is not created merely because service is rendered by a volunteer, but arises from a contract of hire, express or implied. True, the compensation need not be stated: *Houston v. Keats Auto Co.*, 85 Or. 125, 166 P. 531. It is possible for the relationship of employer and employee to exist without

any compensation promised or expected for the services rendered (25 Am. Jur. 453; 39 C. J. 36) but as a general rule employment connotes a promise, express or implied, to pay for work performed: Labatt's Master & Servant (2d Ed.) Vol. 1, § 19. It is said that the test of the employer-employee relation is the right of the employer to exercise control of the details and method of performing the work: 35 Am. Jur. 446.

██ In the instant case, it is believed from the facts averred that it was not the intention of the defendant and the deceased to enter into contractual relations. Indeed, there was no reason to employ this young man to untie the tow rope. Eric rode on the running board and untied the rope as a matter of doing a "good turn" without expectation or hope of reward. Defendant issued no orders to Eric. Nor did he exercise any right of control over him. As stated in 39 C. J. 33:

"The relation of master and servant is that which arises out of a contract of employment, express or implied, between a master or employer upon the one hand and a servant or employee upon the other hand."

While Eric Jylha was not an employee and therefore the Employers' Liability Act has no application, we do not mean to imply that the defendant owed no duty to exercise reasonable care to avoid injuring him.

It is unnecessary to consider the question as to whether the work performed is within the scope of the Employers' Liability Act. The negative answer to the first question is conclusive.

The judgment of dismissal is affirmed.