Argued and submitted March 9, affirmed May 27, 1998

Dennis TROUT,
*Appellant,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION,
an Oregon corporation,
*Respondent.*

(9603-01667; CA A95626)

961 P2d 235

Meagan Flynn argued the cause for appellant. On the opening brief were Kimberley Chaput and Pozzi Wilson Atchison.

Kathryn Reynolds Morton argued the cause for respondent. With her on the brief was Thomas H. Johnson.

Before Warren, Presiding Judge, and Edmonds and Haselton, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiff filed a complaint in his own right and as the assignee of defendant's insured, Charles B. Harris III, dba C.B.H. Company (Harris). He seeks a judgment for $70,000 and a declaration that defendant has waived or is otherwise not entitled to assert a lien for workers' compensation benefits that defendant paid to plaintiff against plaintiff's recovery from Harris. Defendant counterclaimed for foreclosure of the lien. Plaintiff and defendant filed cross-motions for summary judgment. ORCP 47. The trial court denied plaintiff's motion and granted defendant's motion. Plaintiff appeals, and we affirm.

Plaintiff was injured on May 31, 1990, while working within the course and scope of his employment for Kenneth J. Haney, dba Sun Valley Construction (Haney). Haney was a subcontractor on a construction job on which Harris was the general contractor. Because Haney was a noncomplying employer, defendant, as Harris' workers' compensation insurer, paid workers' compensation benefits to plaintiff under ORS 656.029.[1] Plaintiff later brought a third-party action pursuant to ORS 656.578 against Haney and Harris. He alleged claims for negligence and for violation of the Employer's Liability Act (ELA). ORS 654.305 *et seq*. Defendant's insurance policy with Harris also provided "Employers Liability Insurance" to Harris.

Harris tendered the defense of plaintiff's action to defendant, who refused to defend or indemnify him. After a trial to the court, the court found that "plaintiff was performing duties as a carpenter on an apartment project under construction in Washington County under the joint supervision and control of [Harris] and [Haney]." The court then ruled that Harris had violated the ELA "in failing to use every

---

[1] ORS 656.029(1) provides:

"If a person awards a contract involving the performance of labor where such labor is a normal and customary part or process of the person's trade or business, the person awarding the contract is responsible for providing workers' compensation insurance coverage for all individuals, other than those exempt under ORS 656.027, who perform labor under the contract unless the person to whom the contract is awarded provides such coverage for those individuals before labor under the contract commences."

device, care and precaution which is practical for the protection and safety of employees, and in failing to provide a protective device to employees working at heights ten feet or higher above the ground." It entered judgment for plaintiff against Harris in the amount of $210,000. Harris' other insurers paid a combined total of $140,000 on the judgment. Harris declared bankruptcy and assigned his rights against defendant to plaintiff in consideration of a covenant not to execute on the judgment against Harris personally.

Plaintiff then filed this action against defendant. On his own behalf, he alleges that defendant is liable as Harris' insurer for the unpaid portion of the judgment. As Harris' assignee, he alleges that defendant breached its contract of insurance with Harris by refusing to defend or indemnify him in the underlying action. Finally, plaintiff alleges that defendant's breach of contract waived its right to assert a workers' compensation lien against the $210,000 judgment for the benefits it paid to plaintiff.

Defendant contends that it is not liable for the judgment because plaintiff's injury was not covered by the policy that it issued to Harris. Under the section entitled "Part Two—Employers Liability Insurance," the policy provides:

"A.   * * *

> "This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting in death.
>
> "1.   The bodily injury must arise out of and in the course of *the injured employee's employment by you.*
>
> "* * * * *

"B.   * * *

> "We will pay all sums you legally must pay as damages because of bodily injury to *your employees*, provided the bodily injury is covered by this Employers Liability Insurance.
>
> "The damages we will pay, where recovery is permitted by law, include damages:

"1.   for which you are liable to a third party by rea-
son of a claim or suit against you by that third
party to recover the damages claimed against
such third party as a result of injury to your
employee;

"* * * * *

"provided that these damages are the direct conse-
quence of bodily injury that arises out of and in the
course of the injured employee's employment by you."
(Emphasis supplied.)

Initially, defendant moved to dismiss plaintiff's
claim for a declaration that defendant had waived its lien on
the ground that the claim failed to state ultimate facts suffi-
cient to constitute a claim for relief. ORCP 21(A)(8). The trial
court granted that motion. Plaintiff repleaded that claim,
and defendant renewed its motion. The trial court again
granted defendant's motion, and plaintiff did not replead.
The parties then filed cross-motions for summary judgment.
The trial court denied plaintiff's motions for summary judg-
ment, granted defendant's motions for summary judgment,
including judgment on its counterclaim, and entered judg-
ment for defendant accordingly. In regard to plaintiff's claim
under the ELA, the trial court ruled:

"I'm going to grant [defendant's] motion, and my think-
ing is while the ELA treats plaintiff as if he were an
employee for purposes of that statutory scheme, he was not
the employee of the insured under the policy and did not
qualify under your employee provisions.

"I am aware in this legal community of defenses being
provided to employers under that liability portion of the
policy, and in my own experience, that's not - - it's not fre-
quent, but it's not infrequent either. It happens routinely.

"* * * * *

"And finally, under the common meaning of the word
employee, plaintiff would not qualify as the employee of
Harris, the general."

Summary judgment is appropriate when "there is no
genuine issue as to any material fact and * * * the moving
party is entitled to judgment as a matter of law." ORCP 47 C.

In *Anderson v. Jensen Racing, Inc.*, 324 Or 570, 575-76, 931 P2d 763 (1997), the court said:

> " 'As a general rule the construction of a contract is question of law for the court.' *Hekker v. Sabre Construction Co.*, 265 Or 552, 555, 510 P2d 347 (1973).
>
> " 'Unambiguous contracts must be enforced according to their terms; whether the terms of a contract are ambiguous is, in the first instance, a question of law.' *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 347, 876 P2d 761 (1994) (citation omitted).
>
> "Additionally, in deciding whether the terms of a contract are ambiguous and in deciding what those terms mean, the court must consider the context in which they appear. *Id.* at 348, 353-54. * * * The court's goal is to give effect to the intention of the contracting parties." (Citations omitted.)

■         Questions of coverage under an insurance policy are subject to the above rules. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). In this case, the term "employee" is not defined in the policy. Defendant argues that, when an insurance policy contains undefined terms, the courts have consistently held that such words should be given their plain, ordinary meaning. *Twilleager v. N. A. Accident Ins. Co.*, 239 Or 256, 259-60, 397 P2d 193 (1964). It asserts that plaintiff is not an employee of Harris as contemplated by common law or by the ordinary usage of the term because Harris did not provide plaintiff with remuneration. *See Webster's Third New Int'l Dictionary*, 743 (unabridged ed 1993) (defining employee as "one employed by another usu[ally] below the executive level and usu[ally] for wages"); *see also Jylha v. Chamberlain*, 168 Or 171, 175, 121 P2d 928 (1942) (defining employee under the ELA as "one who renders service for another for wages or salary"). Plaintiff does not contend that he was Harris' direct employee, and he concedes that Harris did not directly provide remuneration to him. Plaintiff also concedes that under the common-law definition, he was not Harris' employee. Thus, if defendant's interpretation of the term "employee" is correct, then it was entitled to summary judgment as a matter of law.

Instead, plaintiff argues that, because defendant specifically wrote the insurance policy to provide coverage for a statutory ELA claim, the term "employee" in the policy is defined by the statutory definition of an "employee" under the ELA. In *Anderson*, the court interpreted the term "prevailing party" in a contract by using a statutory definition. It held that "in the absence of evidence that the parties had a different intention, the court will ascribe to the term 'prevailing party' (or a similar one) in a contract 'the statutory meaning of "prevailing party," which is defined in ORS 20.096(5).'" *Anderson*, 324 Or at 579. By analogy, plaintiff asserts that, "[u]nder the [ELA], * * * [he] was Harris' employee, because * * * Harris had charge of or was responsible for plaintiff's work." It follows, according to plaintiff, that because the policy is intended to provide coverage for ELA claims, the statutory definition of "employee" in the ELA is also the definition of "employee" in the policy. Plaintiff then asserts that the ELA contains a different definition of employee apart from the common-law definition of the word. He relies on *Thomas v. Foglio*, 225 Or 540, 545, 358 P2d 1066 (1961), in support of that argument:

> "At the juncture where we held that a plaintiff could recover under the Employers' Liability Law against one who did not employ him, the word 'employer' took on a special and broader meaning embracing situations in which the defendant would not be considered an employer of the plaintiff workman as that term is ordinarily understood. * * * The plaintiff becomes, in effect, an adopted employee to carry out the work project in which plaintiff's actual employer and his adoptive employer are participating. To draw the defendant into the employer-employee relationship in this sense, it must be shown that the defendant was one 'having charge of, or responsible for the work.'"

Before deciding whether the term "employee" in the insurance policy contemplates an ordinary meaning or a statutory meaning, it is first necessary to determine whether plaintiff is correct when he asserts that the term "employee" has a broader meaning under the ELA than under the common-law definition. We begin with the text of the applicable statute. ORS 654.305 provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to *the employees or the public* shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb[.]" (Emphasis supplied.)

Thus, the statute contemplates a risk of danger to two classes of individuals: "employees" and "the public."

In *Sacher v. Bohemia, Inc.*, 302 Or 477, 481, 731 P2d 434 (1987), the court explained what the legislature contemplated in ORS 654.305 when it distinguished between "employee" and "the public." The court first examined the history of the ELA. The ELA was originally enacted in 1911, and its purpose was to impose a higher standard of care on employers engaged in lines of work involving risk or danger than the common law had provided. Or Laws 1911, ch 3, § 1. The court explained:

> "From 1913 to 1965, employers that would otherwise be subject to the ELA for injuries to their employees (*i.e.*, those in charge of, or responsible for work involving risk or danger to their employees) could opt into the Worker's Compensation Act which would immunize them from liability under the ELA, or opt not to participate in the Worker's Compensation Act and to remain subject to the ELA. * * *

> "Initially, the ELA was held to allow both members of the general public and employees of employers engaged in 'work involving risk or danger' to recover for injuries sustained from inherently dangerous instrumentalities under the control of the employer. * * * Two years later * * * the court limited *Clayton* [*v. Enterprise Electric Co.*, 82 Or 149, 161 P 411 (1916)] and held that members of the general public, as such, could not recover under the ELA. * * *

> "This court held in *Byers v. Hardy*, 216 Or 42, 48, 337 P2d 806 (1959), that *an action against a third-party employer could only be maintained because of the reference in ORS 654.305 to a risk or danger to 'the public.'* " *Sacher*, 302 Or at 482 (emphasis supplied; citations omitted).

In other words, "[t]he purpose [of the word 'public' in the ELA] was to give protection to persons working for others." *Saylor v. Enterprise Electric Co.*, 106 Or 421, 439, 212 P 477

(1923). Thus, protection, under the ELA, was provided to "employees" in the ordinary sense of the word *and* to certain members of "the public."

■    The *Sacher* court then defined what workers were included in the definition of the phrase "the public." It explained that "the public" included workers when the defendant and the worker's employer "are simultaneously engaged in carrying out work on a common enterprise." *Sacher*, 302 Or at 483. It held that, under a common enterprise test, third-party employers may be liable to "adopted employees," "intermingled employees," or "an employee of an independent contractor hired by the defendant employer where the defendant employer retains or exercises a right to control the risk-creating activity or instrumentality."[2] *Id.* at 486. In that light, we conclude that the statutory scheme does not expand the definition of "employees" but rather provides for additional coverage for certain members of "the public" who work under particular circumstances. Accordingly, plaintiff is incorrect when he argues that the term "employees" in ORS 654.305 has a broader meaning than its ordinary definition. Rather, plaintiff's purported expanded definition is found within the phrase "the public" in ORS 654.305.

Turning to the language of the policy, it provides that "[t]he bodily injury must arise out of and in the course of *the injured employee's employment by you*." (Emphasis supplied.) Moreover, it also provides that "[defendant] will pay all sums you legally must pay as damages because of bodily injury to *your employees*." (Emphasis supplied.) By its express terms, the policy language does not extend coverage to the statutory classification of workers who are included under the definition of "the public" under ORS 654.305. The policy covers injuries to those employees employed by the insured and not to those members of the public who are also

---

[2] The courts have consistently held that only "employees," either directly against their own employer or indirectly through the common enterprise test, may maintain an action under the ELA. *See Groves v. Max J. Kuney Company*, 303 Or 468, 471-75, 737 P2d 1240 (1987) (holding that an independent contractor may not bring an action under the ELA); *see also Jylha v. Chamberlain*, 168 Or 171, 175, 121 P2d 928 (1942) (holding that volunteers are not employees under the ELA).

furnished protection under the ELA. Because plaintiff concedes that he was not Harris' employee in the ordinary sense, his injury is not covered by the language of the policy.[3]

■   Next, plaintiff argues that the trial court erred when it ruled that defendant was entitled, as a matter of law, to foreclose its workers' compensation lien against the proceeds of plaintiff's judgment against Harris. ORS 656.580(2) provides, in part:

> "The paying agency has a lien against the cause of action as provided by ORS 656.591 or 656.593, which lien shall be preferred to all claims except the cost of recovering such damages."

"Paying agency" means "the self-insured employer or insurer paying benefits to the worker or beneficiaries." ORS 656.576. ORS 656.593(1) provides:

> "The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the proceeds as set forth in this section."

Thus, the statutes establish the procedure for determining the extent to which a "paying agency" may receive a share of any sum recovered if a worker elects under ORS 656.578 to seek damages from the employer or a third person who has caused a compensable injury. In this case, plaintiff sought to recover under the ELA from Harris, who is the "third person" who caused his injury.

■   Plaintiff does not dispute that defendant is the paying agency; however, he first argues that common-law subrogation principles preclude subrogation by an insurer against an insured. Specifically, he contends

> "[n]o right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against a

---

[3] In *Jylha*, the court held that "the word 'employee' * * * must be considered in its ordinary acceptation and meaning." 168 Or at 175. The Workers' Compensation Act now provides the exclusive remedy for most employees. ORS 656.018. Thus, only employees not covered by the Workers' Compensation Act, such as "casual" employees, may now bring an action under the ELA against their employer. *See* ORS 656.027 (defining workers who are not "subject workers" under the Act).

third person to whom the insurer owes no duty. *Couch on Insurance*, § 61:136; *see also Jackman v. Jones*, 198 Or 564, 576, 258 P2d 133 (1953)."

However, defendant did not seek to subrogate its rights against Harris. Instead, it sought to invoke a statutory lien against plaintiff's recovery from Harris. The applicable statute specifically provides for a "paying agency" to recover against such proceeds, regardless of whether the paying agency was the actual insurer of the "third person."

■      Plaintiff also argues that the insurance policy provides only for "Recovery from Others" and that that limitation prohibits recovery of monies that the insurer has paid to an insured. In particular, the policy provides:

> "We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover a payment from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them."

Plaintiff contends that that provision only gives defendant the right to recover from noninsureds. We disagree. The policy provision does not conflict with the statutory language; rather, it provides for other types of recoveries that may not be provided for by statute. Defendant did not invoke the subrogation provision in the policy. Instead, it sought to enforce a statutory lien under the statute that specifically contemplates recovery of paid workers' compensation benefits from proceeds recovered from a third party. Thus, the trial court did not err when it granted defendant summary judgment and ruled that defendant was entitled to enforce its statutory lien.

Plaintiff's third assignment of error is that the trial court erred when it dismissed plaintiff's claim that defendant waived its right to assert its lien against the workers' compensation benefits because defendant failed to defend or indemnify Harris. Also, plaintiff alleges that defendant is equitably estopped from asserting its lien because of the same conduct. Our holding that the policy did not provide

coverage to Harris regarding plaintiff's claims disposes of that assignment of error.

Affirmed.