Argued and submitted April 3, resubmitted In Banc December 6, 1989, reversed and remanded January 17, reconsideration denied March 14, petition for review allowed May 3, 1990 (310 Or 60)

**MOE,**
*Appellant,*

*v.*

**BECK et al,**
*Defendants,*

**THE BENJ. FRANKLIN LEASING COMPANY, INC.,**
*Respondent.*

(87-0828; CA A49767)

785 P2d 781

Claud Ingram, Eugene, argued the cause for appellant. With him on the brief was Bick & Monte, P.C., Eugene.

Carrell F. Bradley, Hillsboro, argued the cause for respondent. With him on the brief was Schwenn, Bradley, Batchelor, Brisbee and Stockton, Hillsboro.

DEITS, J.

Edmonds, J., dissenting.

## DEITS, J.

Plaintiff seeks to recover damages for personal injuries incurred in an accident. He was a truck driver for Bower's Excavating Company and was injured when his truck crashed, allegedly because the brakes were defective. Bower's Excavating Company was subleasing the truck from JB Rock Products, Inc. (JB Rock), which was leasing the truck from defendant The Benj. Franklin Leasing Company, Inc. (Franklin). The trial court granted Franklin's motion for summary judgment, and plaintiff appeals.[1]

Plaintiff assigns as error the summary judgment in favor of Franklin on his negligence claim, in which he alleges that Franklin was negligent for having violated the Oregon Safe Employment Act (SEA), ORS 654.022.[2] That statute, in pertinent part, states:

> "Every employer, owner, employe and other person shall obey and comply with every requirement of every order, decision, direction, standard, rule or regulation made or prescribed by the department in connection with the matters specified in ORS 654.001 to 654.295 and 654.750 to 654.780, or in any way relating to or affecting safety and health in employments or places of employment, or to protect the life, safety and health of employes in such employments or places of employment, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, standard, rule or regulation."

■ Plaintiff argues that the truck in which he was injured was a "place of employment" and that, because Franklin was the "owner" of the truck, it was subject to safety regulations adopted by the Workers' Compensation Department. "Place of employment" is defined as

---

[1] Plaintiff's amended complaint names only Franklin and JB Rock as defendants and states claims for strict liability and common law negligence. The trial court granted summary judgment in favor of Franklin on both claims, although only the negligence claim is involved in this appeal. Final judgment as to Franklin was entered pursuant to ORCP 67B.

[2] Plaintiff's claim is for negligence; he does not allege that SEA creates statutory liability, and we need not decide whether it does. *See Dunlap v. Dickson*, 307 Or 175, 179 n 3, 765 P2d 201 (1989). However, rules adopted under SEA are relevant to plaintiff's negligence claim, if they establish a standard of due care for Franklin. *Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985); *Miller v. Georgia-Pacific Corp.*, 294 Or 750, 662 P2d 718 (1983).

"every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employe works or is intended to work and every place where there is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation * * *." ORS 654.005(8).

The truck in this case comes within the definition, because it was a place where an activity related to the employer's business was carried on.

The more difficult question is whether Franklin is an "owner" under SEA. An "owner" is

"every person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment." ORS 654.005(6).

The affidavits submitted by the parties establish that JB Rock contacted Franklin to secure financing for the purchase of the truck. Franklin then purchased the truck and leased it to JB Rock. The lease agreement specifies that only a lessor-lessee relationship is created and that Franklin is the sole owner of the truck "notwithstanding the execution and filing of any financing statement." The lease does not give JB Rock the option to purchase the truck at the end of the lease.

Franklin contends that it is not an "owner" as that term is defined in ORS 654.005(6), because it is only the financier of the truck and retained record title only as a means of securing payment. The legislature may not have intended that SEA impose a duty on lessors of equipment who hold title merely to secure payment of the purchase price. However, there is nothing in the statute or legislative history that allows us to conclude that SEA does not apply in such a case. The legislature did not define as "owner" any person with "ownership, control *and* custody." Rather, it defined as "owner" any person who has "ownership, control *or* custody." ORS 654.005(6).[3] (Emphasis supplied.) Franklin is the record

---

[3] The dissent would have us read out of the statute the word "or" and, instead, redefine "owner" as a person who is in a position to exercise control over a workplace. The dissent's reworking of the definition of "owner" is based on its opinion that the legislature did not intend that "ownership" of a workplace should be a sufficient basis for having to comply with SEA, even though that is what the statute clearly says. The

owner. The statute does not distinguish between various types of ownership interests.[4] We may not insert what the legislature omitted from the statute. ORS 174.010.

We hold that, because Franklin holds record title to the vehicle, it is the "owner," as the term is defined in ORS 654.022.[5] The trial court erred in granting summary judgment for Franklin.

Reversed and remanded.

**EDMONDS, J.,** dissenting.

The majority holds that a lessor of equipment who retains title merely to secure payment of a purchase price is an "owner" for purposes of liability under the Oregon Safe Employment Act (SEA). The majority reads ORS 654.005(6) too broadly. "Owner" is defined by that statute:

> "[E]very person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment."

dissent does not point to any legislative history or case law to support its view. Instead, the dissent discounts our interpretation of the statute as "absurd." The general policy statement of the statute, however, provides that: "The purpose of [SEA] is to assure *as far as possible* safe and healthful working conditions for every working man and woman in Oregon * * *." ORS 654.003. (Emphasis supplied.) Perhaps the dissent, or even the majority, would make a different policy choice if that were our responsibility, but requiring an owner of a workplace to comply with the SEA, even an owner who has chosen not to exercise actual control, cannot be said to be absurd, nor is it inconsistent with the policy of making every Oregon workplace a safe place.

[4] Franklin erroneously cites *Miller v. Georgia-Pacific Corp., supra,* for the proposition that SEA applies only if an owner *exercises control* over the work place. In that case, Georgia-Pacific Corp. (G-P) owned property where a work related accident occurred. The plaintiff sued G-P on a negligence claim and under the Employers Liability Act (ELA). The negligence claim alleged that G-P breached its standard of care in two ways: first, as an owner-occupier of land and, second, because it violated safety rules adopted under SEA. The court concluded that G-P did not breach its standard of care as an owner-occupier of land, because it it did not participate in or have control over the activity which resulted in the accident. The court nevertheless concluded that evidence of SEA violations was relevant to G-P's standard of care.

[5] The dissent concludes that "someone who merely holds a security interest" should not be considered an "owner" under the statute. We do not so hold. It is not merely holding a security interest that makes Franklin an "owner" under the statute. Rather, Franklin is an "owner," because it kept the title to the vehicle in *its* name and, according to the lease agreement, would retain ownership of the vehicle at the end of the lease.

That definition must be read in context with the statutory policy of the SEA[1] to encourage employers and employees to provide safe and healthy work conditions. The act is aimed at those who control that environment. Nowhere is an intent expressed to regulate the conduct of a lending institution, such as Franklin, that utilized a lease as a security device and whose only involvement with the equipment in this case was leasing it to JB Rock, who in turn leased it to Bower's Excavating Company.

The majority's application of the literal meaning of "owner" produces an absurd result. If the literal import of a word in a statute is so at variance with the apparent policy of the legislation as a whole as to bring about that sort of result, we should define the word consistently with the legislature's intent. *See Brown v. Portland School Dist. # 1,* 291 Or 77, 83, 628 P2d 1183 (1981), *quoting Johnson v. Star Machinery Co.,* 270 Or 694, 704, 530 P2d 53 (1974). "Owner," in the context of

---

[1] ORS 654.003 provides:

"Policy. The purpose of the Oregon Safe Employment Act is to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon, to preserve our human resources and to reduce the substantial burden, in terms of lost production, wage loss, medical expenses, disability compensation payments and human suffering, which is created by occupational injury and disease. To accomplish this purpose the Legislative Assembly intends to provide a procedure which will:

"(1) Encourage employers and employees to reduce the number of occupational safety and health hazards and to institute new programs and improve existing programs for providing safe and healthful working conditions.

"(2) Establish a coordinated program of worker and employer education, health and safety consultative services, demonstration projects and research to assist workers and their employers in preventing occupational injury and disease, whatever the cause.

"(3) Authorize the Director of the Department of Insurance and Finance and the designs of the director to set reasonable, mandatory, occupational safety and health standards for all employments and places of employment.

"(4) Provide an effective program, under the Director of the Department of Insurance and Finance, to enforce all laws, regulations, rules and standards adopted for the protection of the life, safety and health of employees.

"(5) Establish appropriate reporting and research procedures which will help achieve the objectives of the Oregon Safe Employment Act, identify occupational hazards and unsafe and unhealthy working conditions, and describe the nature of the occupational safety and health problem.

"(6) Assure that Oregon assumes fullest responsibility, in accord with the federal Occupational Safety and Health Act of 1970 (Public Law 91-596), for the development, administration and enforcement of safety and health laws and standards."

the SEA means a person who has the ability to comply with ORS 654.022, not someone who is an owner for the purpose of holding a security interest.

I dissent.

Buttler, P. J., joins in this dissenting opinion.