Argued and submitted June 7, 1990, the decision of the Court of Appeals affirmed, the judgment of the circuit court reversed and case remanded for further proceedings July 25, 1991

Larry MOE,
*Respondent on Review,*

*v.*

James F. BECK,
JB Rock Products, Inc.
and First Interstate Bank of Oregon,
*Defendants,*

THE BENJ. FRANKLIN LEASING
COMPANY, INC.,
*Petitioner on Review.*

(CC 87-0828; CA A49767; SC S36916)

815 P2d 692

William H. Stockton, Hillsboro, argued the cause and filed the petition for the petitioner on review.

Claud Ingram, Eugene, argued the cause for respondent on review.

Gregory A. Chaimov and John J. DeMott, of Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief for *amicus curiae* U.S. Bancorp Leasing and Financial.

Before, Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

PETERSON, C. J.

## PETERSON, C. J.

The defendant is a leasing company that leased a truck to one James Beck. The lease describes the defendant as the "owner" of the truck. A worker was injured while driving the truck and brought an action against the defendant, claiming that the defendant had the responsibilities of an "owner" under ORS 654.022 (which is a part of the Oregon Safe Employment Act (OSEA)). On summary judgment, the trial court ruled against the plaintiff. The Court of Appeals reversed, stating that "because [the defendant] holds record title to the vehicle, it is the 'owner' as the term is defined in ORS 654.022." *Moe v. Beck,* 100 Or App 177, 180-81, 785 P2d 781 (1990). We affirm the Court of Appeals.

The trial court granted the defendant's motion for summary judgment on these facts:

The defendant, Benjamin Franklin Leasing Company, Inc., is in the business of leasing chattels to others. It purchases equipment selected by a prospective lessee and then leases the equipment to the lessee.

James Beck wanted to acquire a dump truck from a dealer in Albany. He contacted the defendant with the hope that the defendant would purchase the truck and lease it to him. The defendant agreed, purchased the truck and leased the truck to Beck for four years. Concerning ownership, the lease contained this provision:

"7. OWNERSHIP AND NON-CANCELABLE LEASE. Lessee acknowledges that Lessor is now and shall hereafter remain the sole owner and title holder of the Property and the parties intend that only the relationship of lessor/lessee is created hereby. This is a non-cancelable contract of lease only notwithstanding the execution and filing of any financing statement and nothing herein or in conjunction herewith shall be construed as a sale of the Property or as conveying or granting to Lessee any option to acquire any right, title or interest, legal or equitable, in or to the Property, other than use and possession."

At the expiration of the lease, the lessee was required to return the property to the defendant.

The lease also stated that the lessee must "maintain the Property in good repair, appearance and functional order

[and to] not use or permit the use of the Property in any unintended, injurious or unlawful manner." The contract states "that [the defendant] has no obligation to install, maintain, operate, repair, erect, adjust, or service the Property." Costs associated with these responsibilities, as well as "charges imposed on or with respect to the Property, or on the value, rental, ownership, use, possession, leasing, operation, control, or maintenance thereof," were Beck's sole responsibility. In addition, the defendant "assume[d] no responsibility for the condition, safeness, usability, repair, fitness, or merchantability of the Property or its compliance with any law."

Concerning inspection, the lease provided: "Lessor may enter on Lessee's premises or elsewhere and inspect the Property or observe its use." The "remedies" paragraph of the lease authorized the defendant, in the event of a default, to "enter the premises [and] take possession of, remove and retain the Property * * *."

Assignment of the lease without the defendant's written consent was prohibited. Without notice to the defendant, Beck subleased the truck to Bower. The plaintiff, Larry Moe, a Bower employee, was injured when the brakes on the subleased truck that he was driving allegedly failed, causing the truck to go over an embankment and roll into a ravine. The plaintiff filed a complaint against the defendant[1] alleging, among other things, that the defendant was negligent in failing to comply with safety rules promulgated under the OSEA, which require that all vehicles covered by the OSEA be equipped with an effective braking system and emergency braking system that are regularly tested and serviced, OAR 437-56-035(1), (2) and (4), OAR 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; that all vehicles have an operative steering mechanism, OAR 437-56-040(1), and accident prevention tags, OAR 437-28-1 through 10; and that all vehicles are inspected before each shift, with defective parts replaced, 437-56-50(1)-(3).[2]

---

[1] The plaintiff also named James F. Beck and JB Rock Products, Inc., as defendants. The claims asserted against them are not at issue on this appeal.

[2] In addition to the claims listed, the plaintiff asserted other instances of alleged negligence that do not involve the OSEA. The sufficiency of those allegations is not involved in the appeal.

The defendant moved for summary judgment contending that it had no liability as an "owner" under the OSEA, and that it was not negligent. The trial judge granted the motion and entered judgment accordingly. The plaintiff appealed asserting that (1) the truck was a "place of employment"[3] and (2) that the defendant, as "owner" of the truck, was potentially liable for failing to comply with safety rules adopted by the Director of Insurance and Finance or the Workers' Compensation Board, ORS 654.025(2). As stated, the Court of Appeals reversed and remanded.

■    In its petition for review to this court, the defendant does not challenge the Court of Appeals' conclusion that the truck was a "place of employment." The defendant disputes the Court of Appeals' conclusion that "it is the 'owner,' as the term is defined in ORS 654.022."[4] 100 Or App at 181.

654.022 states:

> "Every employer, owner, employee and other person shall obey and comply with every requirement of every order, decision, direction, standard, rule or regulation made or prescribed by the department in connection with the matters specified in ORS 654.001 to 654.295 and 654.750 to 654.780, or in any way relating to or affecting safety and health in employments or places of employment, or to protect the life, safety and health of employees in such employments or places of employment, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, standard, rule or regulation."

ORS 654.005(6) defines owner to include "every person having ownership, control or custody of any place of employment * * *." There is no claim that the defendant had

---

[3] ORS 654.005(8) defines "place of employment."  ·

" 'Place of employment' means and includes every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employee works or is intended to work and every place where there is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation, including a labor camp provided by an employer for employees or by another person engaged in providing living quarters or shelters for employees, but 'place of employment' does not include any place where the only employment involves nonsubject workers employed in or about a private home."

[4] "Owner" is defined in ORS 654.005(6), not ORS 654.022.

either custody or control of the truck. The case turns on the meaning of "having ownership * * * of any place of employment."

Divining the legislative intent in statutes using the word "owner" has been a vexing problem for nearly a century. *Binhoff v. State,* 49 Or 419, 422, 90 P 586 (1907) ("the word 'owner' * * * has no fixed meaning"). *Accord State v. The Calif. Ore. Power Co.,* 225 Or 604, 612, 358 P2d 524 (1961) (owner of an easement not an "owner" under statute imposing liability for fire suppression costs), and *Schram v. Manary,* 123 Or 354, 363, 260 P 214, 262 P 263 (1927) (the word "owner," as used in the Mechanic's Lien Law, includes a purchaser in possession of real property). *See also Pedro v. January,* 261 Or 582, 602, 494 P2d 868 (1972).

■ The OSEA refers to "owner" on only six occasions.[5] In those provisions where "owner" does appear, its use suggests that the "owner" possesses some involvement with the work activity or workplace. ORS 654.015 prohibits an "owner" from "*construct[ing]* or *caus[ing]* to be constructed or maintained" unsafe places of employment. (Emphasis added.) ORS 654.067 permits safety and health authorities to inspect the workplace premises "upon presenting appropriate credentials to the owner, employer or agent in charge." We read "agent *in charge*" (emphasis added) to mean either the "employer's" or the "owner's" agent. One reasonable import of the statute's language is that the word "owner" is used in a vein similar to the word "employer," one who performs an authoritative or supervisory function. Similarly, ORS 654.150 and 654.160 combine to require the owner of a construction site and the employer of the construction crew to specify in the construction contract which party will supply

---

[5] Owner" appears in the following statutes:

ORS 654.005(6)  (definition of owner)

ORS 654.015  (prohibits construction of unsafe or unhealthy environment)

ORS 654.022  (duty to comply with all rules)

ORS 654.067  (inspectors must present credentials to "owner, employer or agent in charge" before inspection)

ORS 654.150  (employer or owner must provide sanitary facilities at construction projects)

ORS 654.160  (sanitary facilities responsibility must be included in contract between owner and employer)

sanitation facilities at the work site. If no such provision appears in the contract, the owner of the site is liable for the employer's costs associated with providing such facilities. The tenor of the OSEA's provisions with regard to an "owner's" responsibilities arguably suggests that the "owner" is one who enjoys some degree of involvement with the work or workplace. Even though the word "owner" is ambiguous, as demonstrated by the Oregon cases and statutes cited above, it is nonetheless clear that the OSEA defines an owner in three *alternative* ways: First, as a person who has "control" of a place of employment. *Or* second, as a person who has "custody" of a place of employment. *Or* third, as a person "having ownership" of a place of employment.

The legislative history is silent as to whether the legislature intended the word "owner" to include a finance company in the position of the defendant here. In using the phrase "having ownership, control or custody," the legislature must have meant that one "having ownership" means something different from one having only "custody" or only "control."

Under the contract between the defendant and Beck, the defendant has an ownership interest. The contract describes the defendant as "the sole owner and title holder" of the truck that was involved in the occurrence. The truck was to be returned to it at expiration of the lease. The contract gives the defendant the right to enter the premises "and inspect the Property or observe its use." In the absence of some legislative history indicating that the legislative intent was that the OSEA not apply to persons in the position of the defendant, we interpret the OSEA to include a lessor in the position of the defendant within the definition of "owner."[6]

Accordingly, we agree with the Court of Appeals that the trial court erred in granting the defendant's motion for summary judgment. The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

---

[6] This case does not involve one who holds only bare legal title to secure payment. Assuming without deciding that the legislature intended that the OSEA apply only to owners that have the right or ability to correct any safety problems or to otherwise take preventative actions, on the record before us, the contract does not unambiguously preclude that right.