Submitted December 6, 2010, affirmed March 30, petition for review allowed July 22, 2011 (350 Or 532)

Thomas BURKE;
and Educative, LLC,
an Oregon limited liability company,
*Petitioners-Appellants,*

*v.*

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Respondent-Respondent.*

Clackamas County Circuit Court
CV09040752; A144975

251 P3d 796

Gary P. Shepherd filed the briefs for appellants.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

This is another case involving the meaning and application of Ballot Measure 49 (2007), the referendum that replaced Ballot Measure 37 (2004) and modified its remedies for reduction in property value caused by a land use regulation. The issue on appeal is whether, for purposes of a Measure 49 claim, the seller under a recorded land sale contract that is in force is, in addition to the purchaser, a qualifying "owner," as defined in ORS 195.300(18). Plaintiff Burke, the land sale contract seller, acquired title to the subject property in 1967, before the adoption of comprehensive statewide planning goals and land use regulations. Plaintiff Educative, LLC (Educative) is the successor to the purchaser's interest in the contract under which Burke sold the property in March 2005, after the adoption of those goals and regulations. As did the trial court in this case, we conclude that Educative, not Burke, is the owner of the property at issue and, therefore, as explained below, we affirm that court's determination that plaintiffs were not entitled to a remedy under their Measure 49 claim.

Measure 37 was adopted by the voters through the initiative process in the 2004 general election and was codified at *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007). It required public entities that enacted and enforced land use regulations to pay a landowner whose property value was adversely affected by any such regulations "just compensation," which the statute generally defined as an amount equal to the reduction in the fair market value of the affected property interest resulting from enforcement of any land use regulation enacted *after the date of acquisition of the property* by the landowner or a family member of the landowner. *Former* ORS 197.352(1) - (3).

Measure 49 changed the adjudicatory processes, approval standards, and extent of relief for two classes of Measure 37 claims: those filed on or before June 28, 2007 (the concluding day of the 2007 legislative session) and those filed thereafter. As to the former class of claims, if, as here, the affected property is located outside an urban growth boundary, section 5 of Measure 49 provides:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment *sine die* of the 2007 regular session of the Seventy-fourth Legislative Assembly [June 28, 2007;1cb is entitled to just compensation as provided in:

"(1) Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city[.]"

Section 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 home sites under a more narrow set of circumstances.

In June 2005, plaintiffs filed a Measure 37 claim with the Department of Land Conservation and Development (DLCD) and Clackamas County for 18 acres of land in Clackamas County that is located north of Highway 212, outside the county's urban growth boundary. In February 2008, plaintiffs filed a supplemental claim under sections 5 and 6 of Measure 49. In that claim, plaintiffs sought, under section 6, the right to create, divide, develop, and sell up to three lots, with each lot capable of supporting residential development. DLCD processed the claim as a noncontested case and, on March 12, 2009, issued a final order denying plaintiffs' claim. Plaintiffs then filed a petition for judicial review of the DLCD decision, which the trial court denied.[1] Plaintiffs appeal from the ensuing judgment.

At issue in this case are provisions in Measure 49. As pertinent here, Section 6, a temporary statutory provision, sets out a cumulative test for claimants to qualify for relief:

"(6) To qualify for a home site approval under this section, the claimant must have filed a claim for the property with both the state and the county in which the property is located. In addition, regardless of whether a waiver was

---

[1] *See* ORS 195.318(1) providing, in part, that:

"[a] person that is adversely affected by a final determination of a public entity under ORS 195.310 to 195.314 or sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, may obtain judicial review of that determination * * * under ORS 183.484, if the determination is one of a state agency. Proceedings for review of a state agency determination under ORS 195.310 to 195.314 or sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, must be commenced in the county in which the affected property is located."

issued by the state or the county before December 6, 2007, to qualify for a home site approval under this section the claimant must establish that:

"(a) The claimant is *an owner* of the property;

"(b) *All owners* of the property have consented in writing to the claim;

"(c) The property is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(d) One or more land use regulations prohibit establishing the lot, parcel or dwelling;

"(e) The establishment of the lot, parcel or dwelling is not prohibited by a land use regulation described in ORS 195.305(3); and

"(f) *On the claimant's acquisition date,* the claimant lawfully was permitted to establish at least the number of lots, parcels or dwellings on the property that are authorized under this section."

(Emphasis added.) In turn, ORS 195.300(18) defines "owner" as follows:

" 'Owner' means:

"(a) The owner of fee title to the property as shown in the deed records of the county where the property is located;

"(b) The purchaser under a land sale contract, if there is a recorded land sale contract in force for the property; or

"(c) If the property is owned by the trustee of a revocable trust, the settlor of a revocable trust, except that when the trust becomes irrevocable only the trustee is the owner."

Finally, ORS 195.328 describes how to determine a "claimant's acquisition date":

"(1) Except as provided in this section, a claimant's acquisition date is the date the claimant became the owner of the property as shown in the deed records of the county in which the property is located. If there is more than one claimant for the same property under the same claim and the claimants have different acquisition dates, the acquisition date is the earliest of those dates.

"(2) If the claimant is the surviving spouse of a person who was an owner of the property in fee title, the claimant's

acquisition date is the date the claimant was married to the deceased spouse or the date the spouse acquired the property, whichever is later. A claimant or a surviving spouse may disclaim the relief provided under ORS 195.305 to 195.336, and sections 5 to 11, chapter 424, Oregon Laws 2007, and sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, by using the procedure provided in ORS 105.623 to 105.649.

"(3) If a claimant conveyed the property to another person and reacquired the property, whether by foreclosure or otherwise, the claimant's acquisition date is the date the claimant reacquired ownership of the property.

"(4) A default judgment entered after December 2, 2004, does not alter a claimant's acquisition date unless the claimant's acquisition date is after December 2, 2004."

According to plaintiffs, they both are owners of the property under ORS 195.300(18). Plaintiffs point to several provisions in that statute and the others quoted above in support of that proposition. First, plaintiffs argue that, because the categories of owners described in the three paragraphs of subsection (18) are set apart by the disjunctive "or," to be an owner a claimant need satisfy only one of those three categories. It follows, plaintiffs reason, that Burke, the fee title holder of the property, is an owner under paragraph (18)(a), and Educative, the purchaser under a recorded land sale contract that is in force, is also an owner under paragraph (18)(b). Plaintiffs further observe that paragraph (6)(a) of Section 6 requires a qualifying claimant to be "an" owner, not "the" owner, which, in plaintiffs' view, supports the conclusion that a property can have multiple owners qualifying under different subsections.

Plaintiffs also rely on ORS 195.328, which recognizes the possible existence of multiple owners of property who acquired ownership on different dates; ORS 195.328(1) provides that "the acquisition date is the earliest of those dates." It follows, plaintiffs assert, that, because Burke became an owner before the adoption of comprehensive state-wide planning goals and land use regulations, plaintiffs have satisfied the eligibility requirement under paragraph (6)(f) of Section 6 that, "[o]n the claimant's acquisition date, the claimant lawfully was permitted to establish at least the

number of lots, parcels or dwellings on the property that are authorized under this section."

To reinforce their argument, plaintiffs also note that, under ORS 195.300(18)(b), only a purchaser with a *recorded* interest qualifies as an owner. Because every property must have an owner, plaintiffs reason that the fee title holder under ORS 195.300(18)(a) must also necessarily be an owner in such a circumstance. It makes little sense, plaintiffs urge, for the happenstance of a *recorded* purchaser's interest to automatically disqualify the fee title holder as an owner under paragraph (18)(a), when an *unrecorded* purchaser's interest would not have such an effect. Finally, plaintiffs argue that, because Educative has not fully performed its obligations under the land sale contract, Burke still holds title to the property and thus remains an owner as a matter of real property law. *See, e.g., Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 312, 822 P2d 694 (1991) ("Although it is possible to separate the right to receive contract payments from the right to repossess the property, it is inherent in the nature of the land sale contract, itself, that the right to receive contract payments and the legal title to the property go hand in hand.").

 The term "owner" has no fixed meaning as it applies to real property law. In 1991, then-Chief Justice Peterson put things this way:

> "Divining the legislative intent in statutes using the word 'owner' has been a vexing problem for nearly a century. *Binhoff v. State*, 49 Or 419, 422, 90 P 586 (1907) ('the word "owner" * * * has no fixed meaning'). *Accord State v. The Calif. Ore. Power Co.*, 225 Or 604, 612, 358 P2d 524 (1961) (owner of an easement not an 'owner' under statute imposing liability for fire suppression costs) and *Schram v. Manary*, 123 Or 354, 363, 260 P 214, 123 Or 469, 262 P 263 (1927) (the word 'owner,' as used in the Mechanic's Lien Law, includes a purchaser in possession of real property)."

*Moe v. Beck*, 311 Or 499, 504, 815 P2d 692 (1991). Rather, the text, context, and legislative history of a statute determine what constitutes an owner under a particular statute. *Id.* In construing the meaning of a statute enacted by legislative referral, such as ORS 195.300(18), we apply the standard principles of statutory construction set out in *PGE v. Bureau*

*of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), as modified by ORS 174.020. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *see also Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560, 871 P2d 106 (1994) (applying principles to constitutional amendment adopted through the initiative process); *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 166-67, 238 P3d 1016 (2010) (applying principles to interpretation of a statute enacted by referendum post-*Gaines*). Our task is to discern what the voters intended when they enacted ORS 195.300(18), which we derive by first looking to the text and context of the provision, taking into account any history of the measure that illuminates the voters' intent. *Gaines*, 346 Or at 172; *Friends of Yamhill County*, 237 Or App at 166. The "best evidence" of what the voters intended when they enacted ORS 195.300(18), however, is "the text of the provision itself." *Ecumenical Ministries*, 318 Or at 559 (internal quotation marks omitted). Accordingly, we begin our analysis there.

■ We agree with plaintiffs that the voters' use of the word "or" to separate the categories of owners in the three paragraphs of subsection (18) is significant, but we draw a different conclusion from that usage. Although the parties' arguments contain other gradients, some of which we will later discuss, their premises may be simply summarized: defendant understands that the word "or," as used in subsection (18), has its plain, natural, and ordinary disjunctive meaning so as to make the paragraphs that it separates alternative, not cumulative, ways of coming within the definition of owner. Plaintiffs, on the other hand, argue that "or," as used in subsection (18), means "and."

 In rejecting an argument similar to plaintiffs' here, the Supreme Court said in *Lommasson v. School Dist. No. 1*, 201 Or 71, 79, 261 P2d 860, *adh'd to in part on reh'g*, 201 Or 90, 267 P2d 1105 (1954):

 "Courts should exercise circumspection to avoid any effort to amend statutes. There is no justification for using 'or' as meaning 'and', unless the failure to do so would leave a statute meaningless or absurd. It is an inexcusable device of interpretation where there is no ambiguity to be

resolved. Generally, the words 'and' and 'or', as used in statutes, are not interchangeable, being strictly of a conjunctive or disjunctive nature, respectively, and their ordinary meaning will be followed if it does not render the sense of the statute dubious or circumvent the legislative intent, or unless the act itself furnishes cogent proof of the legislative error."

In *McCabe v. State of Oregon*, 314 Or 605, 610-11, 841 P2d 635 (1992), the court quoted and reiterated those principles, and it concluded, despite the defendant's contrary arguments, that "[i]n this case there is no reason to reverse meanings; 'or' in [the statute in question] means 'or.' "

That said, we must not mechanically apply the ordinary disjunctive meaning of the word "or" without examining the entire text and context of the statute. *See, e.g., Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) ("Viewed in isolation, that text provides support for employer's position. Ordinarily, however, 'text should not be read in isolation but must be considered in context.' ") (quoting *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004)); *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). As we said in *Petersen v. Fielder*, 170 Or App 305, 311, 13 P3d 114 (2000), the word "or" is generally used to convey a disjunctive meaning, but "or" also can be used to connect alternatives that are not mutually exclusive.

In this case, resort to other portions of the text of subsection (18) reinforces the selection of the ordinary, disjunctive, meaning of "or." The first category of owner in paragraph (18)(a)—the holder of fee title to the property as shown in the pertinent deed records—is the broadest category of ownership, because, by hypothesis, someone with fee title to real property always exists. The second and third categories, however, are much narrower. Under paragraph (18)(b), "if there is a recorded land sale contract in force for the property," then the purchaser under the contract is the owner. Under paragraph (18)(c), "if the property is owned by the trustee of a revocable trust, the settlor of a revocable trust," then the settlor is "the owner." In other words, if either

of the conditions of paragraphs (18)(b) or (18)(c) is met, then the associated definition supplants the first and that alternative definition governs the meaning of "owner." It follows from the overall structure of subsection (18), that, where a recorded land sale contract for property is in force, paragraph (18)(b) applies, and only the purchaser is the owner of the property.

The context of Measure 49 supports the same conclusion. According to Measure 49's legislative purpose statement, it modifies Measure 37 to ensure that Oregon law provides just compensation for unfair burdens while retaining protections for water resources and farm and forest uses. ORS 195.301(2); *Corey v. DLCD*, 344 Or 457, 465-67, 184 P3d 1109 (2008). In view of that purpose, it is reasonable to consider how a land sale contract seller, who holds the status of a secured creditor, and who, so long as the purchaser is not in default, is not entitled to possess or develop the secured property, is unfairly burdened by land use laws and regulations. A seller's position is analogous to that of a mortgagee or trust deed beneficiary who retains legal title as security for the unpaid portion of the purchase price; as long as the indenture remains in force, the secured creditor does not have the right to possess and enjoy the property. *Security State Bank v. Luebke*, 303 Or 418, 423, 737 P2d 586 (1987). In fact, for some purposes, a seller's interest under a land sale contract is not treated as an interest in real property; rather, under the doctrine of equitable conversion, the seller's interest becomes personal property. *Cassidy v. Pavlonnis*, 227 Or App 259, 262, 205 P3d 58 (2009). In short, barriers to the development of property are a burden on a land sale contract purchaser, not the seller, where the contract is "in force."[2] Moreover, it would be ironic, indeed, if the voters had intended for the choice of a land sale security device—that is, a land sale contract as opposed to a purchase money mortgage or trust deed (where title passes to the buyer on closing)—to result in the protection of some, but, not other, secured land sellers who

---

[2] Plaintiffs argue that particular provisions of the parties' land sale contract in this case manifest an intention to make their transaction different from other contracts in that Burke conditionally retained rights under the contract related to a Measure 49 claim. However, those provisions do not affect our analysis of the meaning of ORS 195.300(18).

are otherwise identically situated for purposes of Measure 49.

Other parts of the context of subsection (18) also support our interpretation of its text. ORS 195.328, which establishes the acquisition date for property where there are multiple owners, is particularly illuminating. The purpose of ORS 195.328 is to establish a rule for determining the appropriate date of acquisition in multiple owner situations. Although it is apparent that that section envisions multiple ownership scenarios—where, for example, a joint tenancy or tenancy by the entireties exists—it also is apparent that that provision does not refer to the sort of buyer-seller relationship that plaintiffs in this case occupy. ORS 195.328(3) provides:

> "If a claimant conveyed the property to another person and reacquired the property, whether by foreclosure or otherwise, the claimant's acquisition date is the date the claimant reacquired ownership of the property."

Subsection (3) suggests, by implication, that a Measure 49 claimant who is a secured seller of real property does not become an owner unless he or she reacquires the property; in that circumstance, the acquisition date is the date that the secured creditor reacquires ownership, by foreclosure or otherwise. Although plaintiffs point out that subsection (3) uses the word "conveyed," and they remind us that Burke has not yet conveyed *title* to the property to Educative, in the present context, plaintiffs place too much emphasis on a narrow meaning of "convey."

In that regard, it is significant that subsection (3) does not refer to the conveyance "of title." The ordinary meaning of "convey," as it relates to real property, is "to transfer (as real estate) or pass (a title, as to real estate) by a sealed writing." *Webster's Third New Int'l Dictionary* 499 (unabridged ed 2002). Thus, in its broad sense, "convey" can mean any transfer of an interest in real property, although in a narrower sense it also can particularly refer to the passage of title to real property. In the context of land sale contract transactions under Measure 49, we conclude that the voters intended the term to have the broader meaning. That intent is informed by a usage of "conveys" that the legislature has

adopted in establishing procedures for the forfeiture of a purchaser's interest in real property under a land sale contract. In particular, ORS 93.905 provides:

"As used in ORS 93.905 to 93.940, unless the context requires otherwise:

"* * * * *

"(5) 'Seller' means any person who transfers or conveys an interest in real property, or any successor in interest of the seller."

Thus, the legislature has expressly described a land sale contract seller as a person who "conveys" an "interest" in real property, even though title has not yet been transferred to the purchaser. And, consistently, by the terms of ORS 195.300(18) itself, a land sale contract purchaser holds an ownership interest in real property while the contract remains in force.[3] It follows that ORS 195.328(3) supports the conclusion that, unless and until a seller reacquires the subject property, the purchaser, not the seller, is the owner of the property for purposes of ORS 195.300(18).

In sum, based on our examination of the text and context of ORS 195.300(18), we conclude that the purchaser under a land sale contract that is in force, not the seller, is the owner of the subject real property for purposes of a qualifying Measure 49 claim.[4] Accordingly, the trial court properly entered judgment for defendant.[5]

Affirmed.

---

[3] Consistently with that understanding, ORS 93.935 addresses the effect on a recorded interest, lien or claim, of a purchaser's "reconveyance" to the seller.

[4] We also have examined the legislative history of Measure 49. To the extent that it is helpful, that history supports our conclusion. The Measure 49 explanatory statement provides:

"This measure modifies Measure 37 to give landowners who have filed Measure 37 claims *the right to build homes* as compensation for land use regulations imposed after they acquired their property. * * * Claimants may *build* up to three homes if allowed when they acquired their property."

Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (emphasis added). As discussed, when a land sale contract is in force, only the purchaser, not the seller, enjoys the right to possess and develop the subject property.

[5] Our conclusion also disposes of plaintiffs' second assignment of error, in which they assert that the record lacks substantial evidence to support DLCD's conclusion that Burke is not a qualifying owner of the property.