Submitted November 30, 2010, affirmed May 25, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIN ELIZABETH DONOVAN,
*Defendant-Appellant.*

Jackson County Circuit Court
083840MI; A141100

256 P3d 196

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for driving while under the influence of intoxicants (DUII), ORS 813.010.[1] She argues that the trial court erred in determining she was ineligible for diversion under ORS 813.215(1). That statute provides that a defendant charged with DUII is ineligible to participate in diversion if, among other things, the defendant has been convicted under the "statutory counterpart" to ORS 813.010 in another jurisdiction within the last 10 years. Defendant has a prior conviction in New York within the last 10 years for "driving while ability impaired." The trial court concluded that the New York statute that includes the "driving while ability impaired" offense is a statutory counterpart to ORS 813.010. On appeal, defendant contends that she was previously convicted for an offense that has no "statutory counterpart" in ORS 813.010 and that she is therefore eligible for diversion. We affirm.

In 2004, defendant was convicted in New York of "driving while ability impaired" in violation of New York Vehicle and Traffic Law (VTL) section 1192(1), which provides, "No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." In 2008, defendant was charged with DUII in Oregon. She petitioned for a diversion agreement, but the state objected, arguing that she was not eligible for diversion due to her prior New York conviction. After a hearing on defendant's petition, the trial court concluded that VTL section 1192(1) is a "statutory counterpart" to ORS 813.010 and that defendant was thus ineligible to participate in diversion. Defendant then entered a conditional guilty plea, reserving the right to appeal the adverse determination of her diversion eligibility. ORS 135.335(3).

On appeal, defendant contends that VTL section 1192(1) and ORS 813.010 are not "statutory counterpart[s]"

---

[1] Unless otherwise noted, all references to ORS 813.010 and ORS 813.215 are to the 2007 version of those statutes. Both statutes were amended in 2009, *see* Or Laws 2009, ch 515, § 1, ch 525, § 1, ch 613, § 1, but those changes do not apply to defendant's conduct and, in any event, are immaterial to the issues in this case.

because those statutes serve different roles in their respective statutory schemes. Specifically, she argues that VTL section 1192(1) "proscribe[s] conduct that falls below the threshold of Oregon DUII" and that Oregon has no analogue to New York's "driving while ability impaired." Moreover, defendant argues that a violation of VTL section 1192(1) is merely a traffic infraction, rather than a crime, further distinguishing it from the provisions in ORS 813.010.

The state responds that, despite any differences between the statutes, they are statutory counterparts because both are "directed at impaired driving resulting from [consumption of] alcohol or other intoxicants." Alternatively, the state argues that, even if VTL section 1192(1) is not the statutory counterpart to ORS 813.010, defendant was ineligible for diversion under other provisions of ORS 813.215(1) that disqualify a defendant from participating in diversion if convicted of an offense in another jurisdiction "that involved the impaired driving of a vehicle due to the use of intoxicating liquor[.]"[2] We conclude that the trial court did not err in determining that VTL section 1192(1) is a statutory counterpart to ORS 813.010 and that defendant was therefore ineligible for diversion.

ORS 813.215(1)(b) provides that "[a] defendant is eligible for diversion if the defendant * * * has not been convicted of an offense described in paragraph (a) of this subsection within" 10 years. ORS 813.215(1)(a), in turn, describes the disqualifying offenses:

"(A)    An offense of driving while under the influence of intoxicants in violation of:

"(i)    ORS 813.010; or

"(ii)   The statutory counterpart to ORS 813.010 in another jurisdiction;

"(B)    A driving under the influence of intoxicants offense in another jurisdiction that involved the impaired driving of a vehicle due to the use of intoxicating liquor * * *; or

---

[2] The state's alternative argument was not presented to the trial court; in any event, we need not reach it.

"(C) A driving offense in another jurisdiction that involved operating a vehicle while having a blood alcohol content above that jurisdiction's permissible blood alcohol content."

Here, as noted, the trial court determined that defendant was ineligible for diversion because she had violated a "statutory counterpart to ORS 813.010 in another jurisdiction." ORS 813.215(1)(a)(A)(ii).

Whether a statute in another jurisdiction is a "statutory counterpart" to ORS 813.010 is a question of statutory construction. *State v. Rawleigh*, 222 Or App 121, 125, 192 P3d 292 (2008). Thus, we examine the text of the relevant statutes in context, along with any pertinent legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 813.010, Oregon's general DUII statute, provides, in relevant part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

"(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance."

New York VTL section 1192,[3] which addresses "[o]perating a motor vehicle while under the influence of alcohol or drugs," provides, in relevant part:

"1. Driving while ability impaired. No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol.

"2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .08 of one per centum or more by weight of alcohol in the person's blood as

---

[3] We cite the version of the statute in effect at the time defendant committed her offense in New York in 2004.

shown by chemical analysis of such person's blood, breath, urine, or saliva * * *.

"3.  Driving while intoxicated. No person shall operate a motor vehicle while in an intoxicated condition.

"4.  Driving while ability impaired by drugs. No person shall operate a motor vehicle while the person's ability to operate such a motor vehicle is impaired by the use of a drug * * *."[4]

It is readily apparent that VTL section 1192 is New York's general DUII statute. Like ORS 813.010, it prohibits driving a motor vehicle while under the influence of intoxicating liquor (or drugs). Also like ORS 813.010, it provides alternative methods of proving that a person has committed DUII: either by a chemical analysis of the defendant's blood alcohol content (BAC) or "by showing that the defendant's driving or operating abilities were, regardless of [BAC], impaired by an intoxicant." *State v. Mersman*, 216 Or App 194, 199, 172 P3d 654 (2007), *rev den*, 344 Or 390 (2008).

However, as defendant asserts, VTL section 1192 and ORS 813.010 differ in certain respects. VTL section 1192 makes a distinction between "driving while intoxicated" and "driving while ability impaired," and defines the latter offense—of which defendant was convicted—as a criminal infraction rather than a crime. *See* VTL § 1193 (providing criminal penalties for violations of VTL section 1192). ORS 813.010, on the other hand, contains no such distinction and,

---

[4] We note that VTL section 1195(2) sets out the probative value of blood alcohol content (BAC) evidence for violations of VTL section 1192:

"(a)  Evidence that there was .05 [BAC] * * * shall be prima facie evidence that the ability of such person to operate a motor vehicle was not impaired by the consumption of alcohol, and that such person was not in an intoxicated condition.

"(b)  Evidence that there was more than .05 * * * but less than .07 [BAC] * * * shall be prima facie evidence that such person was not in an intoxicated condition, but such evidence shall be relevant evidence, but shall not be given prima facie effect, in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol; and

"(c)  Evidence that there was .07 * * * or more but less than .08 [BAC] * * * shall be prima facie evidence that such person was not in an intoxicated condition, but such evidence shall be given prima facie effect in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol."

indeed, contains no provision explicitly addressing "driving while ability impaired." Thus, defendant argues that VTL section 1192 has a broader scope than ORS 813.010, in that it may reach conduct that would not amount to DUII in Oregon. Defendant concludes that that difference is fatal to a finding that VTL section 1192 is a "statutory counterpart" to ORS 813.010.

We have considered the meaning of "statutory counterpart" in a series of cases beginning with *State v. Ortiz*, 202 Or App 695, 124 P3d 611 (2005).[5] In *Ortiz*, we addressed whether an Idaho statute under which the defendant had been previously convicted was a "statutory counterpart" to ORS 813.010 for purposes of ORS 813.010(5).[6] We concluded that the Idaho statute, which was a "zero tolerance" provision prohibiting underage persons from drinking and driving, was not a counterpart to ORS 813.010; rather, it was a counterpart to another statute, Oregon's Motorist Implied Consent Law. *Id.* at 699-701. We reasoned that

> "[t]he phrase 'statutory counterpart' * * *, by its terms, refers to 'this statute,' that is, ORS 813.010 itself. It would seem reasonably to follow that the phrase does not refer to counterparts to statutes other than ORS 813.010 * * *. As a result, * * * another state's zero tolerance statute is unlikely to be the sort of statute that the Oregon legislature would have contemplated as a counterpart to ORS 813.010, as it would clearly correspond more closely to Oregon's zero tolerance statute."

*Id.* at 700. Consequently, the defendant's previous conviction could not be used to enhance his Oregon offense to felony DUII. *Id.* at 701.

In *Mersman*, we revisited the meaning of "statutory counterpart" for purposes of ORS 813.010(5). There, the defendant argued that "two prior Alaska convictions did not

---

[5] Those cases are decided under a pre-2007 version of ORS 813.215(1)(a), which was amended in 2007. *See* Or Laws 2007, ch 879, § 10. We discuss the effect of those amendments below. The cases remain relevant to our analysis.

[6] ORS 813.010(5) elevates a DUII conviction to a felony offense where, among other things, the defendant has been convicted at least three times in the preceding 10 years of DUII under ORS 813.010 or its "statutory counterpart" in another jurisdiction. The term "statutory counterpart" in ORS 813.215(1)(a)(A)(ii) carries the same meaning as it does in ORS 813.010(5). *Rawleigh*, 222 Or App at 125 n 2.

qualify as convictions under the 'statutory counterpart' of ORS 813.010 because the Alaska statute under which he was convicted criminalized a broader range of conduct than ORS 813.010." *Mersman*, 216 Or App at 197. Specifically, the Alaska statute (1) did not require a defendant to move his or her vehicle in order to be guilty of DUII and (2) imposed a different BAC standard than ORS 813.010. We noted:

> "In *Ortiz*, we described multiple, disjunctive, ordinary meanings of 'counterpart,' one of which is 'something or someone having the same use, role, or characteristics often in a different sphere or period.' A same 'use' or 'role' refers to an identity of purpose or function, not elements. Statutes having the same 'characteristics' have the same 'trait[s], qualit[ies], or propert[ies]'; they need not be identical in every detail. In short, although statutory counterparts can be duplicates of, or remarkably similar to, each other, the alternative meaning that they may have the same use, role, or characteristics demonstrates that the comparison need not be perfect."

*Id.* at 201 (citations omitted). In light of that meaning, we concluded:

> "Both the Alaska statute and ORS 813.010 constitute the general DUII statutes in their respective jurisdictions and both identify alternative means—one based on proof that a person was 'under the influence' while driving and one based on proof of a particular blood alcohol content—for proving DUII. Those common uses, roles, or characteristics are sufficient, despite the two differences in substantive scope between the statutes, to make them statutory counterparts * * *."

*Id.* at 204.

Finally, and most recently, we addressed the meaning of "statutory counterpart"—this time for purposes of diversion eligibility under ORS 813.215(1)—in *Rawleigh*, 222 Or App 121. In *Rawleigh*, the defendant was denied diversion due to a prior conviction for DUII in Washington. He argued that the Washington statute under which he had been convicted was not a statutory counterpart to ORS 813.010 because it criminalized behavior that Oregon's statute did not. We rejected the defendant's argument, explaining:

"Even assuming that there are dissimilarities between [the Washington statute] and ORS 813.010, nevertheless, [the Washington statute] is Washington's general DUII statute, that is, its statute criminalizing the operation or driving of a motor vehicle while under the influence of intoxicants. And it provides alternative means of proving that a person committed DUII—one based on the person's operation of the vehicle while under the influence of intoxicants and one based on the person's BAC. As in *Mersman*, those common uses, roles, and characteristics are sufficient, despite the possible differences in the substantive scope of the respective statutes, to make [the Washington statute] and ORS 813.010 statutory counterparts for the purposes of ORS 813.215(1)(a)(A)(ii)."

*Id.* at 128.

If that were the end of the story, we would readily conclude that the New York statute at issue in this case is a statutory counterpart to ORS 813.010: VTL section 1192 is New York's general DUII statute, and it provides alternative means of proving that a person committed DUII. Despite semantic differences or slight variations in scope, VTL section 1192 and ORS 813.010 share a common function and many of the same characteristics. Moreover, there is no counterpart to VTL section 1192(1) in Oregon law apart from ORS 813.010. That is sufficient, under our prior interpretations of ORS 813.215(1) and ORS 813.010(5), to establish that VTL section 1192 is a statutory counterpart to ORS 813.010.

However, as noted, the legislature amended ORS 813.215(1)(a) in 2007 by adding subparagraphs (B) and (C) to the statute. *See* Or Laws 2007, ch 879, § 10.[7] Those subparagraphs provide that, in addition to a prior conviction under subparagraph (A) for violating ORS 813.010 or its statutory counterpart in another jurisdiction, a person may be disqualified from participating in diversion if he or she has a prior conviction in another jurisdiction for a DUII offense "that involved the impaired driving of a vehicle due to the use of intoxicating liquor" or "that involved operating a vehicle while having a blood alcohol content above that jurisdiction's

[7] At the same time, the legislature made analogous changes to ORS 813.010(5). *See* Or Laws 2007, ch 879, § 3.

permissible blood alcohol content." ORS 813.215(1)(a)(B), (C). Those disqualifying offenses are phrased in the disjunctive—that is, they are presented as alternative means of rendering a person ineligible for diversion. Thus, we presume the legislature intended subparagraphs (B) and (C) to have independent meaning from subparagraph (A), rather than to be duplicative or illustrative of what a "statutory counterpart" might be. *See, e.g.*, *Burke v. DLCD*, 241 Or App 658, 665-67, 251 P3d 796 (2011) (discussing the ordinary disjunctive meaning of the word "or"). Any other interpretation would mean the amendments were merely redundant of what was already in the statute. *See State v. Kellar*, 349 Or 626, 636, 247 P3d 1232 (2011) (noting that statutes should be interpreted to avoid redundancy); *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage.").

At first blush, then, the amendments to ORS 813.215(1)(a) seem to narrow the meaning of "statutory counterpart" by excluding from its ambit offenses that involve "the impaired driving of a vehicle" or a violation of the BAC limit—offenses that we might otherwise conclude fall under subparagraph (A), the statutory counterpart provision, as we have previously interpreted it. However, that construction of the statute would, in effect, rob the "statutory counterpart" provision of its substance.

There is a more plausible construction of the text that would preserve the meaning of "statutory counterpart" and be consistent with the legislative history: subparagraphs (B) and (C) apply to foreign statutes that are not in that jurisdiction's "general" DUII statute—typically an omnibus statute prohibiting DUII and providing alternative means of proving that a person is guilty of DUII—but, instead, are stand-alone provisions or other variants of DUII that might not be captured by the "statutory counterpart" provision in subparagraph (A). That construction is consistent with our application of the statutory counterpart provision to general DUII statutes and gives independent meaning to subparagraphs (B) and (C).

The legislative history, although somewhat general, confirms that the legislature did not intend to narrow the meaning of "statutory counterpart" but, rather, intended to counteract inconsistent interpretations of that provision in the trial courts resulting from variation among the DUII laws of other states. *See* Tape Recording, Senate Committee on Judiciary, SB 810,[8] Apr 18, 2007, Tape 106, Side A (statement of Darian Stanford); *id.* (statement of John Bradley); *id.* (statement of Sen Rod Monroe); *id.* (statement of Melissa Chureau); *id.*, Tape 105, Side B (comments of Chair Ginny Burdick). Thus, broadly speaking, the legislature intended subparagraphs (B) and (C) to guard against judicial over-emphasis on the slight variations in how other jurisdictions package their DUII laws. There is nothing in the legislative history to suggest that those provisions were meant to narrow the meaning of "statutory counterpart" in subparagraph (A). Accordingly, we conclude that the amendments to ORS 813.215(1)(a) did not alter the meaning of "statutory counterpart" as we have interpreted that phrase in our previous cases.

Here, defendant's previous conviction for "driving while ability impaired" is couched within New York's general DUII statute, which prohibits DUII and provides alternative means of proving guilt—either by showing that the defendant's driving or operating abilities were impaired by an intoxicant or by showing that the defendant had a certain BAC while driving. Although ORS 813.010 does not employ the same nomenclature as VTL section 1192, the two statutes prohibit substantially the same conduct. *Compare State v. Moody*, 201 Or App 58, 63-64, 116 P3d 935 (2005) (a person is under the influence of intoxicating liquor under ORS 813.010 "when the person's physical or mental facilities are *adversely affected to a noticeable or perceptible degree*" (internal quotation marks and citation omitted; emphasis added)), *with People v. Cruz*, 48 NY 2d 419, 426-27, 399 NE 2d 513 (1979) (a person violates VTL section 1192(1) where the person's ability to operate a vehicle is impaired, *to any extent*, by the consumption of alcohol); *see also Dyrdahl v. DMV*, 204 Or App

---

[8] Senate Bill 810 was later made part of House Bill 2651, the bill that was ultimately enacted.

509, 514-16, 131 P3d 770 (2006) (Arizona DUII statute, which prohibits a person from driving " 'while under the influence of intoxicating liquor * * * if the person is *impaired to the slightest degree*,' " is substantially similar to Oregon's DUII statute (emphasis in original)). Moreover, merely because VTL section 1192(1) is labeled a traffic infraction rather than a crime does not defeat its similarity to ORS 813.010. Indeed, ORS 813.215(1)(a) and (b) speak of "offenses" in other jurisdictions, not "crimes." That choice of words is significant, as the legislature has defined "offense" to include violations. *See* ORS 161.505 (defining "offense" as a crime or a violation); ORS 153.008 (defining "violation"); VTL § 1193 (providing that a violation of VTL section 1192 is punishable by a fine or imprisonment).

In any event, the statutes need not be identical in order to be construed as statutory counterparts; it is sufficient that they have the same use, role, or characteristics. *Mersman*, 216 Or App at 203-04 ("The universe of statutory counterparts is not limited to statutes that have identical elements and, therefore, are duplicates. It is sufficient that, in keeping with the ordinary meaning of 'counterpart,' the statutes are either remarkably similar or have the same use, role, or characteristics."). Thus, despite minor differences, we conclude that VTL section 1192(1) is a statutory counterpart to ORS 813.010 and that defendant is therefore not eligible for diversion.

Affirmed.